MAY TERM, 1869. 283

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

PAINE and Others *v.* THE LAKE ERIE AND LOUISVILLE RAIL-
ROAD COMPANY.

JURISDICTION.—*Title to Real Estate.*—Where the main object of a complaint in the court of common pleas is to have satisfaction entered of a mortgage of real estate, there is no error in overruling a motion made by the defendant before answer to transfer the cause to the circuit court on the ground that the title to real estate is in issue.

RAILROAD.—*Consolidated Companies.*—A railroad company formed by the consolidation of two companies succeeds to all the rights of each of the corporations of which it is composed, and may compromise and settle a claim against one of them, and sustain an action to enforce the settlement.

SAME.—*Directors.*—*Fraud.*—Persons who are directors of a railroad company cannot acquire such an interest in the profits of a contract for the construction of the road as to give them a standing in a court of equity to interpose an objection to the consummation of a compromise between the railroad company and its contractor.

SAME.—*Stockholders.*—An arrangement made by persons who are directors of a railroad company with a contractor, by which such persons are to share in the profits of the contract for the construction of the road, can only be confirmed by the stockholders, and not by the directors of whom the guilty persons form a part.

PLEADING.—*Answer.*—*Costs.*—In a suit to enforce the entering of satisfaction of a mortgage, a party defendant against whom no relief is sought, but who is made a defendant merely to answer as to his pretended interest in the subject-matter of the suit, must file an affirmative answer if relief is sought by him. The general denial by such a party puts the plaintiff to such proof as will place such defendant in the wrong. He may save himself from costs by disclaiming any interest.

DEPOSITIONS.—*Suppression of.*—It is a sufficient reason for suppressing portions of a deposition, that such portions only tend to prove matters set up in a special answer and cross complaint to which a demurrer has properly been sustained.

EVIDENCE.—*Statute Book of Another State.*—A book purporting to be Swan and Critchfield's edition of the statutes of Ohio was offered and, over objection, admitted in evidence. By the title-page it appeared that it was "published by the State of Ohio, and distributed to its officers, under the act of the General Assembly."
*Held,* that there was no error.

SAME.—*Statute.*—*Corporation.*—*Pleading.*—Where a statute of another state constitutes a part of the organization of a corporation suing in this State, it is not necessary to its introduction in evidence by the plaintiff that it should have been pleaded.

VERDICT.—*Interrogatories.*—The court, of its own motion, required the jury, unconditionally, to answer certain interrogatories, which they answered without returning a general verdict.

*Held,* that the answers could stand as a special verdict.

APPEAL from the Fayette Common Pleas.

The appellee on the 10th day of May, 1867, filed her complaint in the Wayne Common Pleas, against the appellants, and George P. Eddy, Thomas Wadsworth, George T. M. Davis, George A. Robbins, John C. Fisher, executor of James Oswald, Alfred B. Williams, and the Lake Erie & Pacific Railroad Company.

The complaint averred, that the appellee was a corporation, organized under the laws of the States of Ohio and Indiana, with authority to construct and operate a railroad from Fremont, in Sandusky county, Ohio, to Rushville, in Rush county, Indiana. That the same was in process of construction, and that a portion of the line was located through the counties of Randolph, Wayne, Fayette and Rush, in the State of Indiana.

That the appellee was created by the consolidation of two existing corporations, to wit, The Fremont, Lima & Union Railroad Company, an Ohio corporation, authorized to construct and operate a railroad from Fremont to Union, a point on the line between said states, and The Lake Erie & Pacific Railroad Company, an Indiana corporation, authorized to construct and operate a railroad from Union to Rushville. That the consolidation was perfected, and a board of trustees elected for the new company in March, 1865. That the appellee by virtue of the consolidation acquired the franchises, rights, and property of the constituent companies, and became liable for their indebtedness.

That prior to the consolidation, The Lake Erie & Pacific Railroad Company had executed a mortgage in the form of a deed of trust to said George T. M. Davis and George A. Robbins, of the line of its contemplated road, with its rights, franchises, etc., a copy of which is exhibited, conditioned for the payment of eight hundred and ninety bonds,

for one thousand dollars each, and delivered said bonds and mortgage to said trustees, to be held by them for the company, and not to be negotiated or disposed of, except by her direction.

That The Lake Erie & Pacific Railroad Company, prior to the consolidation, entered into a written contract with James Oswald, now deceased, for the construction of her road. That, as part of the consideration of the contract, said company stipulated that, upon certain conditions, said bonds should be delivered to said Oswald. That Oswald, prior to the consolidation, commenced the construction of said road, under the contract, and progressed therewith to a considerable extent, then ceased to work, leaving the road unfinished, and the rights of the parties unsettled, until adjusted in the manner hereinafter stated. That said contract was procured to be made by the fraud and collusion of the appellants and said Eddy and Oswald. That the appellants and said Eddy were directors of the company when the contract was made, and it was entered into through their agency. That there was a secret and fraudulent agreement between said Oswald and said directors, that they should participate in the profits of the contract. That the work done under the contract was done through the agency of sub-contractors, and was paid for with the means of the company.

That after the abandonment of said work, and prior to said consolidation, a secret meeting of the board of directors of The Lake Erie & Pacific Railroad Company was called and convened at Suspension Bridge, in the State of New York, without adequate notice to the directors not acting in collusion with said Oswald, the place of meeting having been fixed at a place remote from the office of the company, for fraudulent purposes. That said meeting was held on the 14th day of November, 1864, and the only directors of the company present were the appellants and said Eddy; and that said Oswald was present. That said Oswald submitted to the board of directors, thus organized,

a written proposition to cancel his said contract, in consideration of the delivery to him of seventy of said mortgage bonds, said bonds to be afterwards exchanged for a like amount of the mortgage bonds of the consolidated company, negotiations for such consolidation being then pending, and the surrender and cancellation of the remainder of the said eight hundred and ninety bonds; and that upon the delivery to said Oswald of the bonds of the consolidated company, secured by a mortgage of the consolidated road, the seventy bonds of The Lake Erie & Pacific Railroad Company were to be surrendered, and the mortgage to secure them executed by said company was to be canceled and satisfied. That the proposition by said Oswald was accepted by said directors, the object being to secure to said Oswald and said directors seventy of said bonds of the consolidated company, and, in the meantime, to secure said seventy bonds of The Lake Erie & Pacific Railroad Company to be retained by said trustees, so that it would be impossible for the consolidated company to mortgage its road free from incumbrances without providing for them.

That the action of said board of directors, as to said compromise, was entered of record upon the records of said company, and the other directors of the company, becoming advised of it, controverted its validity, and the matter remained unsettled at the time of said Oswald's death, which occurred on the —— day of ——————, 18—, at Stanford, Canada West, where he was domiciled, where his will was proved, and letters testamentary thereof were granted to the defendant John C. Fisher.

That said John C. Fisher, as executor of said Oswald, for a valuable consideration, paid to him by the defendant Alfred B. Williams, by a written instrument sold and assigned to him said contract and all the rights of said estate therein, with power to said assignee to compromise and settle all unsettled matters growing out of said contract, and to satisfy and cancel the same. That the assignment was dated the 11th day of July, 1866; but the terms thereof had been under ne-

gotiation, and it was understood between said parties that the consolidation had been perfected, and that the appellee was liable to pay any claim against said Lake Erie & Pacific Railroad Company, in favor of said estate, growing out of said contract.

That, pending the negotiations between said Williams and said Fisher, said Williams was negotiating with the appellee the terms of settlement with her, in the event he became assignee of the rights of said Oswald's estate. That, on the 14th day of June, 1866, said Williams and the appellee agreed in writing that in the event of the former becoming assignee of said Fisher, as aforesaid, he would settle with the appellee all claims in favor of said Oswald, or his estate, growing out of said contract, against the appellee or The Lake Erie & Pacific Railroad Company, and discharge the appellee therefrom, and cancel said contract. In consideration of which the appellee agreed to deliver to said Williams twenty-three thousand dollars, at their par value, of first mortgage bonds of the appellee, drawing seven per cent. interest, payable semi-annually, secured by a first mortgage upon the portion of the appellee's route between Union and Cambridge City, in the State of Indiana, to be delivered as soon as practicable after the preparation of the mortgage and bonds and the cancellation of the first mentioned mortgage. That the appellee also agreed, when said Williams should furnish written evidence of the consummation of said arrangement between said Fisher and himself, to pay him the sum of one thousand seven hundred and fifty dollars, to be applied as in said agreement is specified, and also to pay a judgment of about thirteen hundred dollars, indebtedness of the Lake Erie & Pacific Railroad Company, on which, however, a judgment had been taken against said Oswald.

That said Williams, having procured from said Fisher, executor of said Oswald, the assignment and authority aforesaid, on the 11th day of February, 1867, endorsed upon a duplicate original of the contract between said Oswald

and the Lake Erie & Pacific Railroad Company, a written cancellation thereof, and released said company from all liability thereon, and directed the trustees, said Davis and Robbins, to surrender to the plaintiff said mortgage and the bonds secured by it.

That the plaintiff having entered into the agreement with Williams, and being advised that he had become the assignee of the interest of said Oswald, as aforesaid, she, with a view to carrying into effect the contract with said Williams, and with à view to completing the line of said consolidated road, executed two mortgages, the two covering the whole of the road covered by the original mortgage, but being upon different parts thereof, and caused the same to be recorded, and executed her mortgage bonds, amounting, at the par value thereof, to the sum of one million dollars, and delivered the mortgages and the principal part of said bonds to the defendant Davis, the mortgagee and trustee named in said mortages, the bonds to be by him disposed of upon the order and for the use of the plaintiff, as soon as the original mortgage and the bonds secured thereby should be canceled.

That, to facilitate said cancellation, the plaintiff sent an agent to New York, where said Davis and Robbins reside, with the original contract with said Oswald, and the endorsement of said Williams thereon, and with money to pay said trustees for their services.

That said agent tendered them said money, but they, for reasons hereinafter stated, declined the same, and declined to surrender the bonds.

That said agent was also authorized to deliver to said Davis, the trustee of the new mortgage on that portion of the plaintiff's road between Union and Cambridge City, the bonds secured by said mortgage, of the par value of twenty-three thousand dollars, for the benefit of said Williams.

That the plaintiff has paid said Williams the sum of one thousand seven hundred and fifty dollars, and has, satisfactorily to said Williams, satisfied said judgment of one thou-

sand three hundred dollars, rendered against said Oswald.

That, by reason of the premises, the plaintiff is entitled to have the original bonds, amounting to the sum of eight hundred and ninety thousand dollars, and the interest coupons originally attached thereto, delivered up, to be canceled, and the mortgage securing the same released and satisfied by said trustees.

That the plaintiff is advised that said Davis and Robbins, said Fisher,and said Williams, are willing to have said bonds and coupons canceled, and said mortgage released and declared satisfied; but that the said Paine, Eddy, Fay, and Webb, being advised of the aforesaid facts and the rights of the plaintiff, notified said Davis and Robbins that they were interested in seventy of the said original bonds of The Lake Erie & Pacific Railroad Company, under and through said Oswald and the pretended compromise made at Suspension Bridge aforesaid, and that if they surrendered said bonds and satisfied said mortgage, they would hold them liable for a breach of trust.

That the defendant James Wadsworth, of the city of New York, also claims an interest in said seventy bonds.

That said Davis and Robbins decline to surrender said bonds and satisfy said mortgage, in consequence of said claims.

That said Paine, Eddy, Fay, and Webb, have no interest in said bonds, except as before stated, and, for the reasons stated, their claims are without foundation. That if the same are not void, as between themselves and the estate of said Oswald, their claim is exclusively against said estate, and they have no claim against said bonds, or against the plaintiff.

The plaintiff, in conclusion, prays that it be decreed that said bonds be surrendered for cancellation, and that said mortgage be decreed satisfied.

The exhibit annexed to the complaint is a mortgage, or deed of trust, containing the usual provisions contained by

such instruments, dated the 31st day of March, 1863, executed by The Lake Erie & Pacific Railroad Company to George A. Robbins and George T. M. Davis, of New York, as trustees for the bondholders. It mortgages the road, franchises, etc., of the company, extending from Rushville to Union, etc., to secure the payment of eight hundred and ninety bonds, of one thousand dollars each, payable in New York, on the 1st day of June, 1890, with interest from and after the first day of June, 1863, at the rate of seven per cent. per annum, payable semi-annually, on the 1st day of June and December of each year.

The instrument was duly executed by the corporation, the trust accepted by the trustees, and the instrument duly recorded.

On the 17th day of September, 1867, the defendants Paine, Fay, and Webb, moved that the cause be transferred to the Wayne Circuit Court, because the title to real estate was in issue; but the court overruled the motion, and they excepted.

They then demurred to the complaint for the reasons, that it did not state facts sufficient to constitute a cause of action; because the plaintiff had not legal capacity to sue; and because the court had not jurisdiction of the subject of the action.

The court overruled the demurrer, and they excepted.

The defendants Nicholas E. Paine and John D. Fay answer the plaintiff's complaint in three paragraphs.

The first paragraph of the answer is a general denial.

The second is a cross complaint against the plaintiff and their co-defendants, and also against Sylvester Medberry and La Q. Rawson, denying all the charges of fraud, bad faith, and improper conduct, charged in the complaint, and averring, that all they did as directors of said Lake Erie & Pacific Railroad Company, and as individuals, was without fraud, and in good faith, and for the best interests of said company; that said company contracted, December 25th, 1861, with James, Oswald, deceased, for furnishing materi-

als and constructing said road, from Rushville, Rush county, Ind., to Union, Randolph county, Ind.; that by said contract said Oswald was to be paid by said company for said work, labor, and materials, per mile, as follows: $16,000 in the first mortgage bonds of said company, bearing seven per cent. interest, payable semi-annually, in New York; $8,000 in the capital stock of said company; and $3,500 in cash. Said contract cannot be exhibited as a part of this answer, because the same is in the possession of the plaintiff. That at the time of the execution of said contract said company was without means, and wholly without credit, and dependent upon future acquisitions for means to prosecute said work, and said contract was made by the directors of said company in good faith, and, considering the means, credit, and circumstances surrounding said company, was advantageous to her. That at the time of making said contract, and for a considerable time thereafter, these defendants and said Webb and Eddy had no interest in the same, direct or indirect. That on account of the financial troubles consequent upon the late war, said Oswald proposed to abandon his said contract, and these defendants and said Webb and Eddy, desiring the construction of the road, and believing such abandonment would destroy it, accepted a proposition from said Oswald, and entered into a written agreement with him, February 21st, 1862, (copy filed herewith, marked Exhibit No. 1) by which they were to aid him in performing his contract, and share equally the profits or losses arising therefrom. That said Lake E. & P. R. R. Company was designed by its projectors and stockholders to be a link in a series of roads, which, together, would constitute a direct route from Fremont, upon Lake Erie, to Louisville, Ky., and that the Fremont, Lima & Union Railroad Company, a road existing under the laws of Ohio, the proposed route of which was from said town of Union to. said town of Fremont, was being constructed as the north-east link in said projected route from Fremont to Louisville. That said Oswald proceeded with the execution of said contract

until about December 1st, 1864, and was then entitled by the contract to $132,606 cash, and $303,088 in stock. That certificates of stock were duly and legally issued to him according to the provisions of the by-laws of said Company, as were also certificates for a considerable amount of stock to which said Oswald became entitled as a cash subscriber, and assignee of cash subscribers, amounting, at its par value, to the sum of $———.

That about this time the stockholders of said Lake E. & P. R. R. Co. and of the F. L. & U. R. R. Co. became desirous of consolidating said roads, in furtherance of said plan to secure an unbroken line from Fremont to Louisville, and it thereupon became necessary to cancel said Oswald contract, and adjust the terms of such cancellation. That said Oswald submitted, November 14th, 1864, to the board of directors of the Lake E. & P. R. R. Co., at a meeting of said board at Suspension Bridge, N. Y., a written proposition, stating the terms upon which such cancellation might be made. Said proposition is filed herewith marked Ex. No. 2. That at the same time and place the President of the F. L. & U. R. R. Co. was present, acting for said company, and by its authority, and, with the directors of the Lake E. & P. R. R. Co., regarding said proposed consolidation as a matter certain to be consummated, for and on behalf of his said company, acted concurrently with the directors of said Lake E. & P. R. R. Co., in negotiating for and canceling said Oswald contract; and in behalf of the same, and in behalf of his own company, and for the benefit of said anticipated consolidated company, executed, with Oswald, a written contract, dated Nov. 14th, 1864, filed herewith as Ex. No. 3. And then and there the board of directors of the Lake E. & P. R. R. Co. unanimously adopted a resolution accepting Oswald's proposition, and canceling his contract; said action being upon the condition that said floating debt was paid and said bonds delivered as stipulated in said contract between said Oswald and said Rawson. A copy of said resolution is filed herewith, marked Ex. No. 4.

And said board then and there resolved, that, in their opinion, a consolidation of said Lake E. & P. R. R. Co. with the F. L. & U. R. R. Co. was expedient, and that such consolidation be made upon the terms agreed upon then and there by written contract, by and between the respective boards of directors of said companies; and said contract was signed by said boards, subject to the approval of the stockholders of their respective companies. That then and there said board of directors of the Lake E. & P. R. R. Co. resolved that an order be delivered to said Oswald directed to the defendants Davis and Robbins, trustees, mentioned in the mortgage annexed to the complaint, directing them, as soon as the said consolidation was perfected, and first mortgage coupon bonds upon the consolidated road of $1,000 each were issued, to deliver to said Oswald seventy of said bonds, which would be placed in their hands for that purpose, and thereupon to cancel all the bonds in their hands, eight hundred and ninety in number, secured by the mortgage annexed to the complaint, pass the same over to the consolidated company, and discharge said mortgage. Said order is filed herewith, marked Ex. No. 5. That all said orders, resolutions, and proceedings, were entered at large upon the order book of the Lake E. & P. R. R. Co., and were had in good faith, without fraud, and were deemed by the directors of said company for its best interest; and were not secretly conducted, but with the full knowledge and approbation of La Q. Rawson, then president of the F. L. & U. R. R. Co., and who is now, and has been continuously, since the consolidation, the president of the plaintiff. That on Dec. 6th, 1864, at a meeting of the board of directors of the Lake E. & P. R. R. Co., duly and legally held at Cambridge City, Wayne Co., Ind., said board, by resolution, adopted, ratified and confirmed the action of the board at Suspension Bridge, aforesaid, as to the consolidation and acceptance of Oswald's proposition and the cancellation of his contract. A copy of said resolution, as to Oswald's contract, is filed herewith, marked Ex. No. 6. That said pro-

ceedings, etc., so adopted and ratified, as aforesaid, constituted the basis of the action of the stockholders in consummating said consolidation. That all said proceedings, etc., were without fraud, etc., and were considered by said board, and by all persons concerned, for the best interests of the road. That said Oswald performed all the agreements made by him in his said proposition to said board, and in his said contract with said Rawson. That all said proceeding had as aforesaid by the directors of the Lake E. & P. R. R. Co. were afterwards, by said company and the plaintiff, with a knowledge of all the facts and their rights in the premises, fully ratified and confirmed, and the consolidation was made with such knowledge. That the plaintiff, after said consolidation, with a knowledge of all the facts, and her rights in the premises, ratified and confirmed the action of said Rawson, and of said directors of the Lake E. & P. R. R. Co. That said Rawson is now, and has been continuously since the consolidation, the president and general agent of the plaintiff. That said Oswald, by said proceedings, contracts, and cancellation of said contract, became and was entitled to seventy of the first mortgage coupon bonds of $1,000 each, secured by the mortgage annexed to the complaint, said bonds being in the hands of the defendants Geo. T. M. Davis and Geo. A. Robbins, as trustees therein mentioned. That said bonds, under the agreement made between said Oswald and said Paine, Fay, Webb, and Eddy, dated the 21st day of February, 1862, are the property of the parties to said agreement, each owning two-fifths thereof, said bonds being the profits of said Oswald in said contract, subject to the claims of said Davis and Robbins to compensation as trustees, and the claim of said Wadsworth.

That said Williams did not make the negotiations and consummate the contract and assignment with said Fisher, or the subsequent contract, assignment, and adjustment with the plaintiff, as in the complaint stated. That what he did was as agent of The Columbus & Indianapolis Central Rail-

road Co. and the Jeffersonville, Madison & Indianapolis Railroad Co. That the bonds alleged to be the property of said Williams, to be secured upon the portion of the road between Cambridge City and Union, are not the property of said Williams, but are really the property of said last mentioned railroad companies. That it is the determination of said companies that the plaintiff's road shall not be constructed between Cambridge City and Union. That said bonds, thus passing into their hands without consideration, are to be used as a part of the machinery to prevent the construction of said road between Cambridge City and Union, as stated.

That said Williams, said railroad companies, and the plaintiff had notice at the time of said negotiations with said Fisher, and at the time of said assignment to said Williams, of the rights of the defendants in said bonds.

That the plaintiff has not executed any first mortgage bonds upon her road, nor does she propose to do so; but, on the contrary, has executed two mortgages upon the portion of her road within the State of Indiana, one covering the portion between Rushville and Cambridge City, the other, the portion between Cambridge City and Union. The number and amount of bonds secured by each is unknown to the defendants, but the total amount is eleven hundred thousand dollars, payable in the year 1900.

That these defendants are the owners of two-fifths of said seventy bonds, subject to the claims of said Davis and Robbins and said Wadsworth as before stated.

That the stock surrendered by said Oswald was placed in the hands of Sylvester Medberry as an escrow, to be held by him, as shown by the contract between said Oswald and said Rawson, and never was returned to said Oswald.

The defendants pray that it be adjudged that they are entitled to two-fifths of said seventy bonds, and that said Davis and Robbins surrender the same to them. That an account be taken with said Davis and Robbins and said Wadsworth, if anything be due them, or either of them,

and they offer to pay into court such sum as may be decreed due them. That said plaintiff and such of the defendants as this pleading is made a cross complaint against be required to make full and true answer thereto. The defendants pray for all other and proper relief, &c.

The third paragraph of the answer is also a cross complaint against the plaintiff and the defendants hereinafter named.

The defendants deny the charges of fraud and improper conduct made against them in the complaint.

They aver that the contract entered into by the Lake Erie & Pacific Railroad Co. with James Oswald was made in good faith on the part of the directors of said company, and with a view to its best interests, and was, considering the circumstances surrounding the company, an anvantageous one for her.

Said contract was made on the 23d day of December, 1861, and at that time and for a long time thereafter, they had no interest in it, direct or indirect. That afterwards, on the 21st day of February, 1862, in consequence of the financial troubles of the country, Oswald was disheartened and proposed to abandon his contract; and these defendants, and others hereinafter to be mentioned, desiring the construction of the road, and knowing that such action by said Oswald would destroy the little credit the road had, accepted a proposition made them by said Oswald, that they should aid him in the performance of said contract and that the profits and losses upon said contract should be divided and borne equally by the parties to said agreement. The parties to said agreement were said Oswald, these defendants, and the defendants Eddy and Webb. A copy of said agreement is made part hereof, marked Exhibit No. 1.

That said Oswald proceeded with his work under the contract until it was estimated under the contract as follows: cash, $132,606, and stock, $303,088. That this work and materials were done and furnished prior to the 1st day of December, 1864.

About said date it was desired by the stockholders of the Lake Erie & Pacific Railroad Co. to consolidate said road with the Fremont, Lima & Union Railroad Co., with which road it was subsequently consolidated; the plaintiff being the consolidated company. That in anticipation of said consolidation, said Oswald submitted to the board of directors of the Lake Erie & Pacific Railroad Co. a proposition, agreeing that upon its acceptance his contract might be canceled. This proposition was submitted to a meeting of said board at Suspension Bridge, in the State of New York, on the 14th day of November, 1864. A copy of said proposition is filed herewith, marked Exhibit No. 2.

That in addition to the stock issued to said Oswald under said contract, he possessed a large amount of stock, to wit $————, issued to him upon cash subscription.

That the said board of directors, believing it for the best interest of said corporation, adopted a resolution accepting the proposition of said Oswald, and canceled said contract. Said board also then and there adopted a resolution declaring that they deemed it expedient that there be a consolidation of said Lake Erie & Pacific Railroad Co. with said Fremont, Lima & Union Railroad Co., and that the consolidation be made upon the terms then and there agreed upon by the board of directors of each company, subject to the approval of the stockholders of said companies. The directors of said Lake Erie & Pacific Railroad Co. also then and there adopted a resolution, resolving that an order be delivered to said Oswald, directed to Messrs. Davis and Robbins, the trustees mentioned in the mortgage annexed to the complaint, directing them, as soon as said consolidation was perfected and first mortgage coupon bonds upon the consolidated road of $1,000 each were issued, to deliver to said Oswald seventy of said bonds, which would be placed in their hands for that purpose, and thereupon to cancel all the bonds (890) in their hands secured by said mortgage annexed to the complaint, pass the same over to the consol-

idated company, and discharge said mortgage.   A copy of said order, marked Exhibit No. 5, is filed herewith.

That all said orders, resolutions, and proceedings were entered at large upon the order book of said Lake Erie & Pacific Railroad Co., and were had in good faith, without fraud, and were deemed by said Directors for the best interests of said company; and were not secretly had, but with the full knowledge and approbation of La Q. Rawson, then president of the Fremont, Lima & Union Railroad Co., and who is now, and has been continuously since the consolidation, the president of the plaintiff.

That afterwards, on the 6th day of December, 1864, the board of directors of the Lake Erie & Pacific Railroad Co., at a meeting duly held at Cambridge City, Wayne county, Ind., by resolutions adopted and entered upon the corporation order book of said board, adopted, ratified, and confirmed the action of said board at Suspension Bridge aforesaid, to wit, on the 14th day of November, 1864, as to the subjects of consolidation and said Oswald contract.   That said proceedings so adopted and ratified constituted the basis upon which said roads were subsequently consolidated.

That said Oswald, under said proceedings and the cancellation of said contract, was entitled to seventy of the first mortgage coupon bonds for $1,000 each, secured by the mortgage annexed to the complaint, said bonds being in the hands of said Davis and Robbins, as trustees therein mentioned.   That said Oswald performed all the agreements made by him in his proposition heretofore set out and accepted by the board of directors of said Lake Erie & Pacific Railroad Co.   That said bonds, under the agreement dated February 1st, 1862, are the property of the persons specified in said agreement as therein stated, subject to the claim of said Davis and Robbins for compensation as said trustees and the claim of said Wadsworth.   They aver that said Williams and the plaintiff had full knowledge of the rights of the defendants in said bonds, secured by said mortgage aforesaid, at the time of negotiation for and assignment of

said Oswald contract. That the plaintiff has not executed a first mortgage upon her whole road, nor does she propose so to do, but on the contrary has executed two mortgages upon the part of the road formerly known as the Lake Erie & Pacific Railroad Co., one covering the road from Rushville to Cambridge City, the other from Cambridge City to Union; but the number of bonds secured by each is unknown to the defendants, but the total amount these defendants charge to be $1,100,000, payable in the year 1900.

The defendants aver that they are entitled to two-fifths of said seventy bonds, subject to the claims aforesaid, and they pray that an account thereof be taken, and such decree be made as is just and equitable; that the court decree that they are entitled to two-fifths of said seventy bonds; and that said trustees be adjudged to surrender the same to them.

They further allege that the stock surrendered by said Oswald was placed in the hands of Sylvester Medberry as an escrow, to be held by him until said seventy first mortgage bonds of the consolidated company were delivered to said Oswald; and he is made a party hereto, and required to answer this answer and cross complaint.

The plaintiff, said Wadsworth, Eddy, Webb, Davis, Robbins, Fisher as executor of Oswald, Williams, Medberry, The Lake Erie & Pacific Railroad Co., and La Q. Rawson, are made defendants to this cross complaint, and are required to answer the same.

The defendants pray that the court will, upon the final hearing herein, make such order and decree as equity and the rights of the parties demand.

*Exhibits to the Answer.*

No. 1.

Whereas James Oswald, Esq., of Canada West, did on the 23d day of December, 1861, enter into a contract with the Lake Erie & Pacific Railroad Company to construct a single track railroad, as set forth in said contract, from Rush-

ville to Union, in the State of Indiana; and whereas it was understood by the undersigned that L. Q. Rawson was, in furtherance of said project, and as President of the Fremont & Indiana Railroad Company to give to said Lake Erie & Pacific Railroad Company, one hundred and fifty thousand dollars of the second mortgage bonds of said Fremont & Indiana Railroad Company, which were then valued at eighty cents on the dollar, but which said second mortgage bonds have been cut off by a secret foreclosure of the first mortgage bonds of said company; and whereas the undersigned have aided said Oswald and expect to aid him in the prosecution of said contract to completion: Now, therefore, in consideration of such aid, and furnishing, by L. Q. Rawson, on his part, an equivalent of first mortgage bonds of the Fremont & Indiana Railroad Company under its new organization, for those before mentioned as having been cut off, it is hereby mutually covenanted and agreed by and between the undersigned, that the net profits of the contract of said Oswald with said Lake Erie & Pacific Railroad Company shall be shared equal by the parties hereto as well as all losses, share and share alike.

Dated at Suspension Bridge, N. Y., February 21, 1862.
(Signed.)

JOHN D. FAY.
JAMES OSWALD.
D. WEBB.
GEO. P. EDDY.
N. E. PAINE.

No. 2.

SUSPENSION BRIDGE, N. Y.,
Nov. 14, 1864.

*To the President and Directors of the Lake Erie & Pacific Railroad Company:*

GENTLEMEN, Having been informed that you are desirous of consolidating your line of road with the Fremont, Li-

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

ma & Union Railroad Company, in the State of Ohio, and in order to enable you to do so, that you request of me a proposition as to the terms upon which I will cancel my contract made with you on the 23d day of December, 1861, for constructing your said line of road, I beg leave to make the following proposals:—

1st. I will cancel and abrogate my said contract, upon your giving me seventy of the first mortgage coupon bonds of your said company, of one thousand dollars each, which bonds are to be exchanged for a like number, kind, and amount of bonds of the consolidated company, in time and manner hereinafter specified.

2d. You to pay the floating debt of said company, including five promissory notes of five hundred dollars each made by the directors of said company. The pressing portion of said debt to be paid at once, and the balance too as soon as practicable thereafter; I to pay all liabilities I have incurred since the first day of October last.

3d. I will settle and pay the trustees of said bonds, G. A. Robbins and Geo. T. M. Davis; will settle and pay the Hon. James Wadsworth for his services.

4th. You to give me an order upon said trustees for the balance of said bonds, 820 in number, and, also, for the bonds, seventy in number, which I am to have under this proposition; but all of said bonds shall be and remain in the hands of said trustees until the bonds of the consolidated company are issued and ready for delivery as hereinafter stated, when said trustees shall cancel and exchange seventy of said bonds for a like number, kind, and amount of said consolidated bonds, which consolidated bonds they are to hold for the benefit of, and to deliver to, Mr. James Oswald, when called for by him; also, that they will, at such time, cancel and deliver to said consolidated company the balance of said bonds, eight hundred and twenty in number, and discharge the mortgage upon which said bonds are issued.

5th.   The bonds of the consolidated company to be issued and exchanged for the present bonds within six months from the date hereof.

6th.   You to issue to me the amount of stock subscribed by me, and now due me as a cash payment upon my said contract for work already done.

(Signed.)                                JAMES OSWALD.

### No. 3.

This agreement by and between James Oswald, of Canada West, and L. Q. Rawson, of Fremont, Ohio, *witnesseth:* that said Oswald has agreed to endorse to L. Q. Rawson, and place in the hands of S. Medberry, of Columbus, Ohio, three hundred and sixty-nine thousand nine hundred and fifty dollars of the capital stock of the Lake Erie & Pacific Railroad Company, which the said Medberry is to have transferred on the books of said company to the said L. Q. Rawson, and take new stock therefor in his name, which certificate shall be endorsed in blank by said Rawson, and said certificates are to be held by said Medberry in trust until the said Rawson, or the consolidated company of the Fremont, Lima & Union Railroad Company and the Lake Erie & Pacific Railroad Company shall have paid off, or secured to be paid, the floating debt of said Company.

Second.   And until seventy of the first mortgage bonds of the consolidated company of the Fremont, Lima & Union Railroad Company and the Lake Erie & Pacific Railroad Company are delivered by said Rawson, or some agent of the consolidated company, to the trustees named in the bonds of the Lake Erie & Pacific Railroad Company, subject to the order of said Oswald; the said debt to be paid, or secured to be paid within one year, and the said bonds delivered within six months from the date hereof; but if the said debts are not so paid, or secured to be paid as aforesaid, and said bonds so delivered, then, and in that case, the said stock is to be re-delivered to said Oswald by said Medberry, or to said Oswald's order.

Third. When said debt is paid, or secured to be paid as aforesaid, and bonds delivered as above stated, the said Medberry shall deliver the said stock to said Rawson, or his order, and the said trust hereby created shall be ended and of no further effect.

In witness whereof, the parties have hereto set their hands and seals, this 14th day of November, 1864.

(Signed.)            JAMES OSWALD, [L. S.]

                 LA Q. RAWSON, [L. S.]

### No. 4.

On motion of John D. Fay, seconded by D. Webb, the following resolution was unanimously adopted:

*Resolved,* That the proposition of James Oswald, submitted to this board, and which is hereinafter set forth, by which he rescinds and cancels his contract for the construction of the Lake Erie & Pacific Railroad, be, and the same is hereby accepted, with all its terms and conditions; and said contract is hereby declared void and of no further effect: *provided,* the floating debt is paid off by L. Q. Rawson, of Ohio, and the bonds delivered as per agreement between said Oswald and L. Q. Rawson, on this 14th day of November, 1864.

### No. 5.

On motion of John D. Fay, seconded by N. E. Paine, it was resolved that the following order be delivered to James Oswald, to wit:

*To Messrs. Davis & Robbins, Trustees, &c.:*

GENTLEMEN, As soon as the proposed consolidation of the Lake Erie & Pacific and Fremont, Lima & Union Railroad Companies is perfected, and the first mortgage coupon bonds of such consolidated roads, of one thousand dollars each, are issued, you are requested to deliver to the undersigned James Oswald seventy of such consolidated bonds (that number to be placed in your hands for that purpose), and thereupon you are to cancel all the bonds (890) of the Lake Erie & Pacific Railroad Company now in your hands,

and pass the same over to said consolidated company, and to discharge the mortgage therewith connected.

Yours truly,

GEO. P. EDDY,

(Signed.) N. E. PAINE,

D. Webb,

JOHN D. FAY,

*Directors of the Lake E. & P. R. R. Co.*

*Suspension Bridge, Nov.* 14, 1864.

JAMES OSWALD, *Contractor.*

No. 6.

On motion of John·D. Fay, seconded by N. E. Paine, it was

*Resolved,* That all other resolutions passed at Suspension Bridge, on said 14th day of November, and heretofore referred to, relating to the Oswald contract, so called, or otherwise, be and are fully confirmed and adopted. *Carried.*

At the same time the defendant Dwight Webb filed his answer in three paragraphs. The answer of Webb is the same in words, figures, and exhibits, as the foregoing answer filed by the defendants Paine and Fay, except that he claims an interest of one-fifth only in said seventy bonds.

On the 3d day of October, 1867, the plaintiff filed her demurrer to the second and third paragraphs of the answer and cross complaint of Paine and Fay.

At the same time the plaintiff filed her demurrer to the second and third paragraphs of the answer and cross complaint of Dwight Webb.

The court sustained said demurrers; to which rulings of the court the defendants excepted.

On the 7th day of October, 1867, the defendants Paine and Fay and the defendant Webb respectively filed their motions and affidavits for a change of venue; and thereupon the venue of this cause was changed to the court of common pleas, in the county of Fayette, State of Indiana.

The plaintiff offered in evidence an act of the General Assembly of the State of Ohio, entitled, "An act to provide for the creation and regulation of incorporated companies in the State of Ohio," passed May 1st, 1852; and offered to read the same from Swan & Critchfield's edition of the Statutes of the State of Ohio.

The defendants objected to the introduction of the same for the following reasons: because the same was irrelevant and incompetent; because the same was not pleaded; and objected to the introduction of Swan & Critchfield's edition of the Ohio statutes in evidence, because the same did not purport to be printed under the authority of the State of Ohio.

Whereupon the court inspected the title-page of said compilation, which is as follows, to wit: "Published for the State of Ohio, and distributed to its officers under the act of the General Assembly," passed March 16th, 1860. "The Revised Statutes of the State of Ohio, of a general nature, in force August 1st, 1860, collated by Joseph R. Swan, with notes of the decisions of the Supreme Court, by Leander J. Critchfield. In two volumes. Vol. I. Cincinnati: Robert Clarke & Co., Law Publishers, 1860."

The court also inspected the reverse side of the title-page, on which is found the following: "Entered according to Act of Congress, in the year 1860, by Robert Clarke & Co., in the Clerk's office of the District Court for the District of Ohio."

The court also inspected the following, found on page 1646 of the second volume of said compilation: "Swan & Critchfield's Statutes, purchase and distribution of by the State. Act of March 16th, 1860. 57 v. stat. 42;" the act referred to not being published in the compilation.

The court thereupon permitted said act to be read in evidence, and the appellant excepted.

The act is as follows:

"An act to provide for the creation and regulation of incorporated companies in the State of Ohio.

[*Passed May* 1, 1852.    50 *vol. stat.* 274.]

(18.) Sec. I.    *Be it enacted by the General Assembly of the State of Ohio*, That any number of natural persons, not less than five, may become a body corporate, with all the rights, privileges, and powers conferred by, and subject to all the restrictions of, this act.

### TO CREATE AND REGULATE RAILROAD COMPANIES.

(19.) Sec. II.    That any number of persons as aforesaid, associating, to form a company for the purpose of constructing a railroad, shall, under their hands and seals, make a certificate, which shall specify as follows: 1. The name assumed by such company, and by which it shall be known. 2. The name of the place of the termini of said road, and the county or counties through which such road shall pass. 3. The amount of capital stock necessary to construct such road.    Such certificates shall be acknowledged before a justice of the peace, and certified by the clerk of the court of common pleas, and shall be forwarded to the Secretary of State, who shall record and carefully preserve the same in his office; and a copy thereof, duly certified by the Secretary of State, under the great seal of the State of Ohio, shall be evidence of the existence of such company.

(20.) Sec. III.    That when the foregoing provisions have been complied with, the persons named as corporators in said certificate are hereby authorized to carry into effect the objects named in said certificate, in accordance with the provisions of this act; and they and their associates, successors and assigns, by the name and style provided in said certificate, shall thereafter be deemed a body corporate, with succession, with power to sue and be sued, plead and be impleaded, defend and be defended, contract and be contracted with, acquire and convey, at pleasure, all such real and personal estate as may be necessary and convenient to carry into effect the objects of the incorporation, to make and use a common seal, and the same to alter at pleasure, and do all

needful acts to carry into effect the object for which it was created; and such company shall possess all the powers, and be subject to all rules and restrictions provided by this act.

(21.) SEC. IV. Said corporation shall be authorized to construct and maintain a railroad, with a single or double track, with such side tracks, turn-outs, offices, and depots, as they may deem necessary, between the points named in the certificate, commencing at or within and extending to or into any town, city, or village, named as the place of the termini of such road, and construct branches from the main line to other towns or places within the limits of any county through which said road may pass.

Sections 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, are upon the subject of the general powers of the corporation.

(38.) SEC. XXI. That whenever the lines of railroad of any railroad companies in this State, or any portion of such lines, have been or may be constructed, so as to admit the passage of burden or passenger cars over any two or more of such roads continuously, without break or interruption, such companies are hereby authorized to consolidate themselves into a single corporation, in the manner following:

1. The directors of said two or more corporations may enter into an agreement, under the corporate seal of each, for the consolidation of the said two or more corporations, prescribing the terms and conditions thereof; the mode of carrying the same into effect; the name of the new corporation; the number of the directors thereof, which shall not exceed thirteen; the time and place of holding the first election of directors; the number of shares of capital stock in the new corporation; the amount of each share; the manner of converting the shares of capital stock in each of said two or more corporations into shares in such new corporation; the manner of compensating stockholders in each of said two or more corporations who refuse to convert their stock into the stock of such new corporation; with such

other details as they shall deem necessary to perfect such consolidation of said corporations, and such new corporation shall possess all the powers, rights, and franchises conferred upon such said two or more corporations, and shall be subject to all the restrictions, and perform all the duties imposed by the provisions of this act: Provided, that all stockholders in either of such corporations who shall refuse to convert their stock into the stock of such new corporation shall be paid at least par value for each of the shares so held by them, if they shall so require, previous to said consolidation being consummated.

2.   Such agreement of the directors shall not be deemed to be the agreement of the said two or more corporations, until after it has been submitted to the stockholders of each of said corporations, separately, at a meeting thereof, to be called upon a notice of at least thirty days, specifying the time and place of such meeting, and the object thereof, to be addressed to each of such stockholders, when their place of residence is known, and deposited in the post office, and published for at least three successive weeks in one newspaper in at least one of the cities or towns in which each of said corporations has its principal office of business, and has been sanctioned by such stockholders by the vote of at least two-thirds in amount of the stockholders present at such meeting, voting by ballot, in regard to such agreement, either in person or by proxy, each share of capital stock being entitled to one vote; and when such agreement of the directors has been so sanctioned by each of the meetings of the stockholders separately, after being submitted to such meetings in the manner above mentioned, then such agreement of the directors shall be deemed to be the agreement of the said two or more corporations.

(39.) Sec. XXII.   Upon making the agreement mentioned in the preceding section, in the manner required therein, and filing a duplicate or counterpart thereof in the office of the Secretary of State, the said two or more corporations mentioned or referred to in the said first section, shall be

merged in the new corporation provided for in such agreement, to be known by the corporate name therein mentioned; and the details of such agreement shall be carried into effect, as provided therein.

(40.) Sec. XXIII. Upon the election of the first board of directors of the corporation created by the agreement in the twenty-first section of this act mentioned, and by the provisions of this act, all and singular the rights and franchises of each and all of said two or more corporations, parties to such agreement, all and singular their rights and interests in and to every species of property, real, personal, and mixed, and things in action, shall be deemed to be transferred to, and vested in, such new corporation, without any other deed or transfer; and such new corporation shall hold and enjoy the same, together with the right of way and all other rights of property, in the same manner and to the same extent as if the said two or more corporations, parties to such agreement, should have continued to retain the title and transact the business of such corporations; and the titles and the real estate acquired by either of said two or more corporations, shall not be deemed to revert or be impaired by means of anything in this act contained; Provided, that all rights of creditors, and all liens upon the property of either of said corporations, parties to said agreement, shall be and hereby are preserved unimpaired; and the respective corporations shall continue to exist as far as may be necessary to enforce the same; and provided further, that all the debts, liabilities and duties of either company shall thenceforth attach to such new corporation, and be enforced from the same, to the same extent, and in the same manner, as if such debts, liabilities, and duties had been originally incurred by it.

(41.) Sec. XXIV. Any railroad company heretofore or hereafter incorporated, may at any time, by means of subscription to the capital of any other company, or otherwise, aid such company in the construction of its railroad, for the purpose of forming a connection of said last mentioned

road with the road owned by the company furnishing said aid; or any railroad company organized in pursuance of law, may lease or purchase any part or all of any railroad constructed by any other company, if said companies' lines of said road are continuous or connected as aforesaid, upon such terms and conditions as may be agreed on between said companies respectively; or any two or more railroad companies whose lines are so connected, may enter into any arrangement for their common benefit, consistent with and calculated to promote the objects for which they were created: Provided, that no such aid shall be furnished, nor any purchase, lease, or arrangement perfected, until a meeting of the stockholders of each of said companies shall have been called by the directors thereof, at such time and place, and in such manner, as they shall designate, and the holders of at least two-thirds of the stock of such company represented at such meeting, in person or by proxy, and voting thereat, shall have assented thereto."

The plaintiff then offered in evidence a certified copy of the charter and articles of association of the Fremont, Lima & Union Railroad Company.

The defendants objected to the introduction of the same for the following reasons: because the same is incompetent and immaterial; because the same is not according to the laws of the State of Ohio; and because the same is not properly proven and certified.

The court overruled the objection, and permitted the same to be read in evidence; to which ruling of the court the defendants excepted.

The certified copy of the articles of association thus offered in evidence recites, that Charles Congdon, of New York City, David J. Cory and Squire Carlin, of Hancock county, Ohio, and L. Q. Rawson and James Moore, of Sandusky county, Ohio, have associated themselves together to form a company, to be called the Fremont, Lima & Union Railroad Company, for the purpose of constructing a railroad from Fremont, Sandusky county, Ohio, through San-

dusky, Seneca, Hancock, and Allen counties, to Lima, in Allen county; thence through the counties of Allen, Auglaize, Mercer, and Darke, to the west line of the State of Ohio, in Darke county; and that the capital necessary to construct the same is $1,500,000.

Said articles are signed and sealed by the parties aforesaid, and dated January 6th, 1862. The signing and sealing of the same is acknowledged before a justice of the peace of Sandusky county, Ohio. The clerk of the Common Pleas Court of Sandusky county, Ohio, certifies the official character of said justice of the peace. The Secretary of State of Ohio certifies that the foregoing is a full and true copy of the original certificate, with the acknowledgment and the certificate of the county clerk, filed and recorded in the Secretary's office, on the 21st day of January, 1862.

La Q. Rawson testified for the plaintiff, as follows: "I was one of the organizers of the Fremont, Lima & Union Railroad Company; and I was afterwards director and president of said company; I so continued until the consolidation of said company with the Lake Erie & Pacific Railroad Company, which was in the winter of 1864–5. There was a great deal of work done on the Fremont, Lima & Union Railroad. There were about thirty-seven miles in operation, and thirty-five miles graded. Directors were elected soon after filing the articles of association, and the organization was kept up by the election of officers, &c., up to the consolidation. The directors were elected on the 3d day of March, 1862. Seven were then elected."

The plaintiff then offered in evidence a certified copy of the articles of association of the Lake Erie & Pacific Railroad Company, which recites, that they whose names are signed to said articles are subscribers to the capital stock of said company, and that more than $50,000 stock is now subscribed, and having elected a director for said contemplated road, they enter into and adopt the following articles of association:

"1st.   The corporate name shall be the Lake Erie & Pacific Railroad Company.

2d.   The amount of capital stock to be $1,000,000, to be divided into 20,000 shares of $50 each.

3d.   Number of directors to be seven.   Present directors, G. B. Bush, T. Beeson, and A. White, of Indiana; Geo. P. Eddy, John D. Fay, and N. E. Paine, of New York; and La Q. Rawson, of Ohio.

4th.   It shall be the duty of the directors to manage the affairs of said company.

5th.   Said road shall extend from Rushville, Rush Co., Ind., through the counties of Rush, Fayette, Wayne, and Randolph, to a point on the east line of said Randolph county, in said State, at or near Union, at the southern terminus of the Fremont & Indiana Railroad, being the distance of sixty miles, or thereabout.   Said road shall pass through or into no other counties."

Said articles are signed by the subscribers to the capital stock, setting forth the place of residence of each subscriber, and the number of shares so subscribed by him.   The original is endorsed, "Articles of association of the L. E. & P. R. R. Co., filed in the office of Secretary of State, Oct. 6th, 1860."

The Secretary of State of Indiana certifies the foregoing to be a full and true copy of the original on file in his office.

Alfred B. Williams testified, as follows:

"I acted as agent of the Lake E. & P. R. R. Co. for three years, commencing during the first year of its organization.   The greater portion of the grading was done, and 80,000 cross-ties were purchased and delivered on the road, Directors and officers were elected, and continued to be up to the consolidation.   North of Cambridge all the road (33 miles) was graded except five miles, and the grubbing was done on this.   Some culverts were also made, but no bridging was done.   There were to be two bridges.   South of Cambridge half of the grading had been done—about ten

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

miles was done.   Forty thousand dollars had been expended."

The plaintiff then offered in evidence a sworn and certified copy of the articles of consolidation between the Lake E. & P. R. R. Co. and the Fremont, L. & U. R. R. Co., from the office of the Secretary of State of Indiana.

The defendants objected to the same.   The court overruled the objection, and permitted the copy to be read in evidence.   To which ruling of the court the defendants excepted.

Said articles of consolidation were entered into on the 8th of December, 1864.   Among other things said articles recite, that the corporate name of the consolidated company shall be the Lake Erie & Louisville Railroad Company.   That the capital stock shall be six million dollars, divided into one hundred and twenty thousand shares of fifty dollars each.   That the basis of the consolidation is to be as follows:   The stockholders of the Lake Erie & Pacific Railroad Company, on the surrender of their stock to the consolidated company, shall receive stock certificates from the consolidated company for the amount of stock so surrendered in exchange thereof; and the stockholders of the Fremont, Lima & Union Railroad Company, on a like surrender of their stock, shall receive like certificates, with sixty per cent. added thereto, to equalize the stock representations of the two companies.   The directors of each of said companies caused their president to officially sign this agreement, and affix the official seals of said companies.

(Signed.)                              LA Q. RAWSON,
        *President of the Lake Erie & Pacific R. R. Co.*
[L. s.]                                ROYAL JENNINGS,
        *Secretary Lake Erie & Pacific R. R. Co.*
[L. s.]                                LA Q. RAWSON,
        *President Fremont, Lima & Union R. R. Co.*
                                       R. W. B. McLELLAN,
        *Secretary Fremont, Lima & Union R. R. Co.*

On the 13th' of December, 1864, the directors of the F., L. & U. R. R. Co. met in their office, and the following proceedings were had:

The articles of consolidation, above set forth, were approved and adopted, and ordered to be submitted to the stockholders of said company, at a meeting thereof to be held in Fremont, Ohio, January 14th, 1865. The Secretary of said company certifies that such meeting of the stockholders was held as ordered, and that more than two-thirds of all the votes (each share representing a vote) were given for the adoption of the contract of consolidation.

On the 8th of December, 1864, the directors of the Lake Erie & Pacific R. R. Co. held a meeting at their office, and the following proceedings were had:

The articles of consolidation, above set forth, were adopted and ordered to be submitted to a meeting of the stockholders of their company to be held for that purpose at Cambridge City on the 18th of January, 1865. The secretary of said company certifies that such meeting of the stockholders was held as ordered, and that more than two-thirds of all the votes (each share representing a vote) were given for the adoption of said contract of consolidation.

The Secretary of State for the State of Indiana certifies, that the above and foregoing is a full, complete, and true copy of the consolidation contract, filed in his office February 4th, 1865.

The Secretary of State for the State of Indiana certifies, under oath, that, as such officer, he has custody of the original articles of association of the F., L. & U. and the Lake E. & P. Railroad Companies; that the foregoing is a true and full copy of the original; that said original has remained unaltered from its date to the best of his belief; that said original was demanded of him by an agent of said consolidated company, and that he declined to give it up, or allow it to be withdrawn from his office.

The plaintiff then offered in evidence an act of the General Assembly of the State of Ohio, passed April 10th, 1856,

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

which took effect May 1st, 1856, entitled, "An act to au-
thorize the consolidation of railroad companies in this State
with railroad companies of States adjoining, in certain
cases, and to authorize railroad companies in this State to
extend their roads in adjoining States," as found in Swan &
Critchfield's compilation of the laws of Ohio. The defend-
ants objected to the introduction of said evidence for the
following reasons: because the same is incompetent, and
immaterial; because the same is not pleaded; because the
same does not purport to be printed under the authority of
the State of Ohio.

The court overruled the objection and permitted said act
to be read in evidence; to which ruling of the court the de-
fendants excepted.

Said act was then read in evidence, as follows:—

"An act to authorize the consolidation of railroad companies in this State with
railroad companies of States adjoining, in certain cases, and to authorize
railroad companies in this State to extend their roads into adjoining
States.

[*Passed April* 10, *and took effect May* 1, 1856.   53 *vol. Stat.* 143.]

(162.) SEC. 1.   *Be it enacted by the General Assembly of the
State of Ohio*, That it shall be lawful for any railroad com-
pany in this State, organized under the general or any spe-
cial law, or which may hereafter be organized in this State,
and whose line of road shall be made or in the process of
construction to the boundary line of the State, or to any
point either in or out of this State, to consolidate its capi-
tal stock with the capital stock of any railroad in an ad-
joining State, the line of whose road has been made or is
in process of construction to the same point, and where the
several roads so unite as to form a continuous line for the
passage of cars: Provided, that roads running to the bank
of any river which is not bridged shall be held to be con-
tinuous under this act.

(163.) SEC. II.   That said consolidation shall be made
under the conditions and restrictions following—that is to
say,

First. The directors of the several corporations may enter into a joint agreement under the corporate seal of each company for the consolidation of said companies, and prescribing the terms and conditions thereof; the mode of carrying the same into effect; the name of the new corporation; the number of the directors and other officers thereof, and their place of residence; the number of shares of the capital stock; the amount of each share; and the manner of converting the capital stock of each of said companies into that of the new corporation, with such other details as they shall deem necessary to perfect such organization and the consolidation of said companies.

Second. Said agreement shall be submitted to the stockholders of each of the said companies, at a meeting thereof, called separately for the purpose of taking the same into consideration; due notice of the time and place of holding such meeting, and the object thereof, shall be given by written or printed notices, addressed to each of the persons in whose names the capital stock of said companies stands on the books thereof, and also by a like notice published in some newspaper in the city or town where such company has its principal office or place of business. And at the said meeting of stockholders the agreement of the said directors shall be considered, and a vote, by ballot, taken for the adoption or rejection of the same, each share entitling the holder thereof to one vote, and the ballots shall be cast in person or by proxy, and if two-thirds of all the votes of all the stockholders shall be for the adoption of said agreement, then that fact shall be certified thereon by the secretary of each of said companies, and the agreement so adopted, or a certified copy thereof, shall be filed in the office of the Secretary of State, and shall be deemed and taken to be the agreement and act of consolidation of said companies. And a copy of said agreement and act of consolidation duly certified by the Secretary of State, under the great seal of the State of Ohio, shall be evidence of the existence of said corporation.

(164.) SEC. III. Upon the making and perfecting the agreement and act as provided in the preceding section, and filing the same or a copy with the Secretary of State, the several corporations, parties thereto, shall be deemed and taken to be one corporation, possessing within this State all the rights, privileges, and franchises, and subject to all the restrictions, disabilities, and duties of such corporation of this State so consolidated.

(165.) SEC. IV. It shall be the duty of the stockholders, at the meeting called to take into consideration said agreement as hereinbefore provided, after the adoption of the same, to appoint a time and place for the election of the directors and other officers of the new corporation, which may be provided for in said agreement, notice whereof shall be given by the secretary of each of said companies, in some newspaper printed at the place of the principal office of each of said companies, of the time and place of said election, at least three weeks previous thereto, which election shall be conducted in the manner that may be prescribed by said meeting of stockholders.

(166.) SEC. V. Upon the election of the first board of directors of the corporation created by said agreement of consolidation, and by the provisions of this act, all and singular the rights, privileges, and franchises, of each of said corporations, parties to the same, and all the property, real, personal, and mixed, and debts due on account of subscriptions of stocks or other things in action, shall be deemed to be transferred and vested in such new corporation without further act or deed; and all property, all rights of way, and all other interests, shall be as effectually the property of the new corporation as they were of the former corporations parties to said agreement; and the title to real estate, either by deed, gift, grant, or by appropriations under the laws of this State, shall not be deemed to revert or be impaired by reason of this act: Provided, that all rights of creditors, and all liens upon the property of either of said corporations, shall be preserved unimpaired, and the respective corporations, may

be deemed to be in existence to preserve the same; and all debts, liabilities and duties, of either of said companies, shall thenceforth attach to said new corporation and be enforced against it to the same extent as if said debts, liabilities, and duties, had been contracted by it. ·

(167.) SEC. VI. Such new company shall, as soon as convenient, after such consolidation, establish a principal office at some point in this State on the line of its road, and change the same at pleasure, giving public notice in some newspaper of such establishment or change.

(168.) SEC. VII. Suits may be brought and maintained against such new company in the courts of this State for all causes of action in. the same manner as against other railroad companies in this State.

(169.) SEC. VIII. That portion of the road of such consolidated company in this State, and all its real and personal property, shall be listed for taxation and taxed in the same manner as the road and property of other railroad companies in this State. To ascertain the proportion of the rolling machinery, subject to taxation in this State, the officer listing the same shall ascertain the value of the rolling machinery of such company, and return a sum bearing the same proportion to the value of the whole that the length of the line of such road within this State bears to the length of the whole line.

(170.) SEC. IX. That any railroad company now organized or which may hereafter be organized in this State for the purpose of constructing a railroad to the boundary line of this State, shall be authorized to extend its road into and through any adjoining State under the regulations which may be prescribed by such adjoining State, and the rights, powers, and privileges of such company over such extension, in construction and use of such road in controlling the property and applying money and assets thereon, shall be the same as if said road had been built wholly within this State.

(171.) SEC. X. Any stockholder who shall refuse to con-

vert his stock into the stock of the consolidated company shall be paid the highest market value of such stock at any time within six months next preceding the time of the making of such agreement for consolidation by the directors, if previous to such consolidation he shall so require; and if the stockholder so refusing to consolidate, and the board of directors of the company desiring to consolidate, can not agree as to the value of said stock, it shall be lawful for the parties to submit the question to arbitration, which arbitration shall be conducted in accordance with the provisions of the law in force regulating arbitrations (so far as the same may be applicable), by three disinterested persons, to be appointed upon the motion of either of the parties by the judge of the court of common pleas of the county in which the person owning the stock shall reside, or, in case he be a non-resident of the State, or of any county through which said road shall pass, then in the county in which the principal office of the company shall be kept; and if the person so refusing to convert his stock shall refuse to submit the question to arbitration, the proper judge shall, upon the application of any director of either of the companies desiring to consolidate, appoint the arbitrators, who shall proceed to ascertain the value of the stock the same as if the question had been submitted by the consent of both parties; and if the party owning the stock shall refuse to receive the amount awarded, in any case provided for in this section, it shall be lawful for the company to deposit the same with the clerk of the court of common pleas of the county in which the arbitration shall be held, which deposit shall authorize the parties to proceed to consolidate without further payment to such stockholder.

(172.) Sec. XI. In all cases of arbitration under the provisions of the foregoing section, it shall be the duty of the party desiring such arbitration to give the opposite party at least ten days notice of his intention to apply to the judge for the appointment of the arbitrators, which notice shall be served in the same manner as is provided for the service

of a summons, and shall specify the time and place of the hearing of such motion: Provided, that in cases of non-residents the notice shall be by publication made in the same manner, and for the same time, as provided by sections seventy, seventy-one, and seventy two, of the act entitled "an act to establish a code for civil procedure," passed March 11, 1853."

The plaintiff then offered in evidence a certified and sworn copy of the articles of consolidation of the Fremont, Lima & Union R. R. Co. with the Lake Erie & Pacific R. R. Co., from the Secretary of State's office of the State of Ohio.

The defendants objected to the introduction of the same for the following reasons: because the same is incompetent and immaterial; because said consolidation is not according to the laws of Ohio; because it is not according to the laws of Indiana; because said constituent corporations are situate in different States; and because the same are not properly proven and certified.

The court overruled said objection and permitted the articles to be read in evidence. To this ruling of the court the defendants excepted.

Said articles of consolidation are the same as heretofore set out. The Secretary of State for the State of Ohio certifies to said articles of consolidation in the same manner as the Secretary of State for the State of Indiana, as heretofore set out.

La Q. Rawson then identified the record of the Fremont, Lima & Union Railroad Company.

The plaintiff then offered in evidence certain entries found therein. The defendants objected to the same for the following reasons: because the same is incompetent and immaterial; because the same is not according to the laws of Ohio; because the same is not according to the laws of Indiana; because said constituent corporations are in different States.

The court overruled said objections, and permitted the

entries to be read in evidence.    To the ruling of the court therein the defendants at the time excepted.

The evidence thus introduced is, in substance, as follows:

A special meeting of the directors of the Fremont, Lima & Union R. R. Co. was held in Fremont, Ohio, December 13th, 1864.    Present at said meeting, La Q. Rawson, C. W. Foster, James Moore, and R. W. B. McLellan.    The following proceedings were had:

The contract of consolidation (heretofore set out) was approved and adopted, and the same was ordered to be submitted to the stockholders at a meeting thereof to be held at the company's office in Fremont, Ohio, January 14th, 1865; and the Secretary was directed to notify said stockholders.

Said contract of consolidation (as heretofore set out) is there spread out as the one referred to above.

On the 3d day of December, 1864, the directors of the F., L. & U. R. R. Co. met at the company's office in Fremont, Ohio.    Said meeting was called by the president, La Q. Rawson, to consider the contract of consolidation, and the following proceedings were then and there had:

The said contract was approved and adopted, and all the doings of said board at their meeting on the 13th day of December (as above set out) were approved and adopted as the act and deed of said company; and the president and secretary were authorized to purchase for said company first mortgage bonds of the Fremont & Indiana Railroad Company at par, and to pay therefor in the capital stock of this company, and the purchase of certain of said bonds heretofore made by the president and secretary was approved and confirmed.

At a meeting of the stockholders of the Fremont, Lima & Union R. R. Co., held at the company's office in Fremont, Ohio, January 14th, 1865, the following proceedings were had:

The contract of consolidation (heretofore set out) was

adopted; and a meeting of the stockholders of this company, and of the Lake Erie & Pacific R. R. Co., of Indiana, was ordered to be held in Union City, on the 22d of February, 1865, to elect nine directors of the Lake Erie & Louisville R. R. Co.

At a meeting of the stockholders of the F., L. & U. R. R. Co., held February 3d, 1865, the following proceedings were had:

It was ordered that the meeting of the stockholders of this company, with the stockholders of the Lake Erie & Pacific R. R. Co., meet at Findley, Hancock county, Ohio, on the 1st day of March, 1865; and that the meeting last above ordered be set aside.

The record of the Lake Erie & Pacific R. R. Co. was then identified.

The plaintiff then offered in evidence certain entries found therein.

The defendants objected to the same, for the following reasons: because the same is incompetent and irrelevant; because said proceedings are not according to the laws of Ohio; because they are not according to the laws of Indiana; because said corporations are in different States.

The court overruled the objection, and permitted the entries to be read in evidence. To the ruling of the court therein the defendants, at the time, excepted.

The evidence thus admitted is, in substance, as follows:

At a meeting of the directors of the Lake Erie & Pacific R. R. Co., at the company's office, in Cambridge City, on the 8th day of December, 1864, the following proceedings were had:

The contract of consolidation (heretofore set out) was adopted; and the same was ordered to be submitted to the stockholders of this company, at a meeting to be held on the 18th day of January, 1865.

On January 30th, 1865, notice was given to the stockholders of the Lake Erie & Pacific R. R. Co., that said contract of consolidation was ratified and adopted by the stock-

holders of each of the constituent companies thereto respec-
tively; and that a meeting of the stockholders of said com-
panies would be held at Findley, Hancock county, Ohio, on
the 1st day of March, 1865, to elect directors for the consol-
idated company.

N. H. Johnson testified for the plaintiff, as follows: "I
was attorney for the L. E. & P. R. R. Co., from April 28th,
1862, to the consolidation. I was present when the vote
of the stockholders was taken upon the question of consol-
idation. This vote was taken at the office of the L. E. &
P. R. R. Co., at Cambridge City, commencing on the 18th
day of January, 1865, and continued by adjournment on
account of the pendency of a complaint in injunction be-
fore Judge Wilson, of the Common Pleas of Wayne county.
I was a stockholder, and I am now. I had two shares. I
was one of the three judges of the election, and was chair-
man. I kept the tally sheet and register of votes. There
is no record in preservation of that vote. I handed the
minutes of the meeting to the Secretary. I have since, with
the officers of the company, made diligent search in the
office of the company for them, but have been unable to
discover anything. The vote was not all cast that day, be-
cause Judge Wilson, the day before, granted a temporary
injunction, enjoining the voting of stock to the amount of
$143,000, which had been issued to Oswald by the company.
The stock of all desiring to vote was voted except this.
The election was then adjourned for three days. When
that time had expired the judge had not decided the case.
We adjourned to a subsequent day when we had a final
decision dissolving the injunction, when the $143,000 was
voted. I know that as much as $375,000 of stock was vo-
ted on the question of consolidation. The whole amount
of stock was near $490,000. All the votes cast were for
consolidation. The opponents declined voting. William
McLaughlin and Newton Irving were the other judges of
the election. La Q. Rawson voted the Oswald stock of
$143,000, on a written proxy produced to us. Mr. Rawson

has been president of the consolidated road since that time. I do not know the amount of stock present that refused to vote. I think Oswald was not present at any of these meetings. Oswald's total stock was $369,000. The application for injuction was aimed at $303,000 of stock, and temporarily granted as to $143,000; subsequently Rawson voted the whole $369,000."

La Q. Rawson testified for the plaintiff: "I was the president of the plaintiff, and I identify her record."

The plaintiff then offered in evidence certain entries found therein. The defendants objected to the introduction of the same. The court overruled the objection, and permitted the entries to be read in evidence; to which ruling of the court the defendants, at the time, excepted.

The evidence thus introduced was, in substance, as follows:

At a meeting of the stockholders of The Lake Erie & Louisville R. R. Co., held in Findley, Ohio, on the 1st day of March, 1865, the following proceedings were had: Nine directors for said company were elected. A meeting of said directors was ordered to be held that day in Fremont, Ohio.

The oath of office was administered to six of said directors, to wit: La Q. Rawson, C. W. Foster, Squire Carlin, William H. Moore, William T. Ballinger, and R. W. B. McLellan.

At a meeting of the directors of the Lake Erie & Louisville R. R. Co. (present, the six above mentioned directors), held in Fremont, Ohio, on the 1st day of March, 1865, the following business was transacted:

La Q. Rawson was appointed President of this company; William H. Moore was appointed Vice President; R. W. B. McLellan was appointed Secretary and Treasurer; La Q. Rawson was appointed Superintendent; S. Medberry was appointed Chief Engineer; B. Amsden was appointed General Agent.

The offices of the company were located, and a seal of

the company adopted. The president and secretary were authorized to issue and deliver certificates of capital stock as provided in the articles of consolidation. They were also authorized to issue and deliver certificates of capital stock to subscribers to the capital stock of either of the constituent companies, who had not received the same, on filing with the secretary receipts of the treasurer of this company, or of the treasurer of either of the constituent companies, showing that said subscriptions had been paid in full.

The plaintiff then offered in evidence the deed of trust executed by the L. E. & P. R. R. Co. to George T. M. Davis and G. A. Robbins, dated March 31st, 1863, to secure 890 bonds, including the seventy bonds in controversy in this case, which said deed of trust is the same as heretofore set out as an exhibit to the complaint.

It is admitted that said 890 bonds are all in the hands of the trustees, except one, which is in the hands of Benjamin Smith, President of the Central Railroad.

The plaintiff then introduced in evidence the contract between James Oswald and The Lake Erie & Pacific R. R. Co., which contract is, in substance, as follows:

Said contract was entered into on the 23d day of December, 1861. For the consideration hereinafter mentioned, Oswald agrees to furnish all the material, and perform all the labor necessary to construct and finish a single track railroad from Rushville, Ind., to Union, Ind., with the necessary appendages, according to the specifications annexed; the work to be commenced within thirty days after notification to Oswald that the local subscription to the capital stock amounts, in the aggregate, to $4,000 per mile, and that the right of way has been secured, and the work staked out, and at least two-thirds of the local subscription paid in; the road to be completed within two years from the commencement of the work, provided the bonds of the company can be judiciously negotiated—said bonds to be received in part payment of the work and used for the pur-

chase of iron; the directors to extend said time, as they deem advisable. For the construction of said road, the L. E. & P. R. R. Co. agrees to pay said Oswald, per mile, as follows: $16,000 in the first mortgage bonds of said company bearing seven per cent. interest, payable semi-annually; $8,000 in the capital stock of said company; and $3,500 in money; payments to be made monthly, according to the work done; the bonds stipulated to be given on this contract to be executed and deposited in some banking institution, together with this contract, as soon as practicable after the commencement of the work—said bonds to be held in trust by such third party, and to be used only in procuring iron. Upon the failure of payments, as above, Oswald can suspend or continue the work at his election, and is released from all liability to further prosecute the work, but the railroad company is not released thereby from any claims of damages Oswald may have by such suspension. No more than $16,000 per mile of first mortgage bonds are to be issued on said road.

Specifications of said work are attached to the above contract.

The plaintiff introduced in evidence a release and cancellation of the contract above set out, which is, in substance, as follows: For value received, and upon a final settlement between the Lake Erie & Pacific R. R. Co., now the Lake Erie & Louisville R. R. Co., and the assignee of the executor of James Oswald, deceased, the foregoing contract is cancelled—full satisfaction and payment thereof acknowledged by said assignee. The railroad company is released from all liability on the same. The trustees named in the mortgage made by the L. E. & P. R. R. Co. are directed to surrender said bonds covered by said mortgage to said L. E. & L. R. R. Co., successors of the L. E. & P. R. R. Co., held by them in escrow. Said release is signed "A. B. Williams," and bears date, "Fremont, Ohio, April 11th, A. D. 1867."

The plaintiff then offered in evidence the proposition of James Oswald to the Lake E. & P. R. R. Co., dated Decem-

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

ber 11th, 1861, for the construction of said road.    The foregoing contract is based upon said proposition.

A resolution, which was adopted, accepting the aforesaid Oswald proposition, signed by the Secretary of the company, then follows in the record.

The plaintiff then offered in evidence an entry in the Probate Order Book of the Fayette Common Pleas, made at the December term, 1867, as follows:

"Be it remembered that on this 9th day of December, 1867, J. P. Siddall, attorney for the Louisville & Lake Erie Railroad Co., filed in the clerk's office of the court of common pleas, an authenticated copy, with the proceedings thereon, of the last will and testament of James Oswald, late of the county of Welland, Canada, which reads, to wit:" The proceedings exhibited are the proceedings of the surrogate court of Welland county, admitting to probate the will of James Oswald, of the village of Stanford, county of Welland, and Province of Canada, and appointing John C. Fisher to administer upon the estate.

The will of James Oswald was exhibited as part of said proceedings.    It is dated the 26th day of March, 1864, and was admitted to probate on the 28th day of March, 1866. The testator bequeathed all his property to his wife, Jane Oswald.

Attached to said proceedings are two certificates.    Dexter D. Everand certifies, that he is register of the surrogate court of Welland county, "that the annexed is a true, full, and complete copy of the will of James Oswald, and of the probate thereof, as appears from said original will on file in my office, and from the records of said court, and I further certify that as such register I am clerk of said court, and have the legal custody of such will and probate thereof, and of the records of said court, and I further certify that Harvey Williams Price, Esq., is the judge of said court, and surrogate of said county."

Then follows the certificate of Harvey Williams Price.

"I, Harvey Williams Price, judge of her Majesty's surro-

gate court, of the county of Welland, in the Province of Ontario, do hereby attest and certify that the above named Dexter D. Everand is the register and clerk of said court, and that I am judge thereof, and that the above certificate of the said register is made and signed by him and is authentic, and that as such register and clerk he has legal custody of said will and the probate thereof."

The order thus proceeds:

"And the court being satisfied that the instrument ought to be allowed as the last will of the deceased, ordered that the same be filed and recorded by the clerk of this court."

The appellants objected to the introduction of said evidence for the reasons, that it was irrelevant and incompetent; because the court had no jurisdiction of the subject matter of the order; and because there was no evidence that said Oswald was dead. But the court permitted said entry and exhibits to be read in evidence, and the appellants excepted.

The plaintiff then offered in evidence the record of the will of James Oswald and the probate thereof in Canada, as recorded in the record of wills of Fayette county, Indiana, the will and probate being the same heretofore referred to.

The appellants objected to the introduction of this evidence for the reasons, that it was irrelevant and incompetent; because it was improperly of record; and because there was no evidence of the death of James Oswald. The court overruled the objection, and the appellants excepted.

Alfred B. Williams testified for the plaintiff, as follows: "I was acquainted with James Oswald; he lived at Stanford, C. W., three or three and one-half miles from Suspension Bridge, in the county of Welland. I was at his house on the 26th or 27th of September, 1865, and saw him. I was there again on the 10th of May, 1866, and again on the 10th or 11th of July, 1866. When at his house in May, 1866, I saw Mrs. Oswald, but did not see him. I met John C. Fisher there."

An agreement between John C. Fisher, as executor of Oswald, and the witness, was exhibited to the witness. The witness testified that he recognized the signature of Fisher, and saw him sign it.

The plaintiff then offered said agreement in evidence. The defendants °objected to the introduction of the same for the following reasons: Because it was irrelevant and incompetent; because there was no evidence of Oswald's death, or that Fisher had power to make it.

The court overruled the objection, and permitted the agreement to be read in evidence. To the ruling of the court therein the defendants excepted.

Said agreement is, in substance, as follows: That on the 23d day of December, 1861, James Oswald entered into a contract with the Lake Erie & Pacific R. R. Co., to construct the road of said company, etc. Said contract referred to is the same as heretofore set out. That said contract was not wholly executed, but was suspended and discontinued; and that at the time of the death of said Oswald, there were certain rights and liabilities of the parties thereto growing out of said contract, which remain unsettled. That John C. Fisher, as said Oswald's executor, for the purpose of settling said estate, and for a valuable consideration paid, or agreed to be paid, by Alfred B. Williams, sets over and assigns to said Williams all rights and interests of said estate, legal or equitable, in said contract, including the certificates of stock in said company held by S. Medberry in trust under said contract. Said Williams indemnifies said estate against all claims that may be asserted against it by the Lake E. & P. R. R. Co., its successors, or others claiming under it. Said agreement is dated July 11th, 1866.

The plaintiff then offered in evidence an agreement between said A. B. Williams and the Lake Erie & Louisville R. R. Co:, dated the 14th day of June, 1866. The defendants objected to the introduction of said evidence. The court overruled the objection, and to such ruling of the

court the defendants excepted. Said agreement was then read in evidence, and is, in substance, as follows:

Said agreement was made on the 14th day of June, 1866, between the Lake Erie & Louisville R. R. Co., successors by consolidation of the Lake Erie & Pacific R. R. Co., of the first part, and Alfred B. Williams, of the second part. It is agreed that if said Williams becomes the assignee of said executor of said James Oswald, deceased, of the contract between said Oswald and the Lake Erie & Pacific R. R. Co. (which contract has been heretofore set out), he, the said Williams, will cancel said contract. In consideration of such cancellation, the party of the first part agrees to deliver to said Williams $23,000, at par value, of the first mortgage bonds of said first party. And said first party also agrees to pay to said Williams, on proof to said first party of such before mentioned assignment to him, the said Williams, by the aforesaid executor, of said Oswald contract, the sum of $1,750—the same to be applied in payment of the claims of said estate against said first party. Said first party also agrees to pay a certain judgment against said Oswald, amounting to about $1,300. It is further agreed that $369,950 of the capital stock of said Lake Erie & Pacific R. R. Co., now in the hands of S. Medberry in trust, shall be delivered by said Medberry to the said L. Q. Rawson.

Alfred B. Williams continued his testimony, as follows: "I am the same Williams mentioned in the contract with John C. Fisher."

An agreement, dated April 11th, 1867, endorsed on the contract between James Oswald and the Lake Erie & Pacific R. R. Co., purporting to be signed by this witness, was then exhibited to him, and he identified his signature. The plaintiff then offered in evidence the said agreement endorsed upon said contract. The defendants objected to the introduction of the same. The court overruled the objection, and the defendants excepted.

Said endorsement was then read in evidence, and is the

MAY TERM, 1869. 331

Paine and Others *v.* The Lake Eric and Louisville R. R. Company.

same heretofore set out. Said endorsement is a cancellation of the Oswald contract, and releases said company from all liabilities on account of the same.

A. B. Williams continued his testimony, as follows: The plaintiff asked the witness the following question: "State whether you have heard Davis or Robbins say anything about the surrender of the bonds." The defendants objected to the same, because it was irrelevant and incompetent, and because it was hearsay. The court overruled the objection, and permitted the witness to answer the question. The defendants excepted to the ruling of the court therein. The witness answered, that Davis refused to surrrender the bonds or cancel the mortgage.

The defendants then offered to prove by said Williams, that all the moneys used by him in his expenses to Canada and return, in the negotiations and consummation of the contract with Fisher, were the moneys of others, to wit, Dillard Ricketts and Benjamin Smith. The plaintiff objected to the introduction of said evidence, and the court sustained the objection. To said ruling of the court the defendants excepted.

The defendants also offered to prove by said Williams, that in his negotiations with said Fisher in and about said contract and assignment (heretofore set out), he was acting as the agent of D. Ricketts, President of the Jeffersonville R. R. Co., and Benjamin Smith, President of the Indiana Central R. R. Co., and that he had no interest in the same, but all benefits arising therefrom were for said Ricketts and Smith. The plaintiff objected to the introduction of said evidence, and the court sustained the objection. To which ruling of the court the defendants excepted.

La Q. Rawson testified, for the plaintiff: "I talked with Paine and Webb, two of the defendants herein, in New York, before this suit was commenced. They were speaking about these seventy bonds, and said they had some interest in them, and wanted to know when they were going to be got out, and why they had not been got out before."

The plaintiff then offered in evidence an order of the directors of the Lake Erie & Louisville R. R. Co., authorizing the issue of two mortgages, dated August 14th, 1866. The defendants objected to the same. The court overruled the objection, and permitted the order to be read in evidence. To the ruling of the court therein the defendants excepted.

The evidence thus introduced is, in substance, as follows: By order of the board of directors of the Lake Erie & Louisville R. R. Co., for the purpose of finishing the portion of said road lying between Cambridge City, Ind., and Rushville, Ind., an issue of 400 bonds of this company, of $1,000 each, payable in the year 1900, bearing seven per cent. interest, payable semi-annually, was authorized; said bonds to be secured by mortgage, or deed of trust, upon the aforesaid portion of the road of this company. It was also resolved by said board, for the purpose of finishing that part of said road between Cambridge City, Ind., and Union City, Ind., to issue 700 bonds of said company, of $1,000 each, payable in the year 1900, bearing seven per cent. interest, payable semi-annually; said bonds to be secured by mortgage, or deed of trust, upon said part of the road lying between Cambridge City, Ind., and Union City, Ind.

The plaintiff then introduced in evidence part of the mortgage record of Fayette county, the same being the record of a deed of trust by the Lake E. & L. R. R. Co. to Geo. T. M. Davis, dated September 25th, 1866, which mortgage, or deed of trust, contains the usual provisions of such instruments, and was executed on the 25th day of September, 1866, by the Lake E. & L. R. R. Co. to George T. M. Davis, of New York, as trustee for the bondholders. It mortgages the road, franchises, etc., of said company extending from Cambridge City, Ind., to Rushville, Ind., etc., to secure the payment of four hundred bonds, of $1,000 each, payable on the 1st of January, 1900, in New York, with seven per cent. interest per annum, payable semi-an-

nually. This instrument was duly executed by the parties thereto, and recorded.

La Q. Rawson testified for the plaintiff, as follows: "The bonds authorized by the orders, and the two mortgages mentioned therein, were executed, and forwarded to the trustee, George T. M. Davis, at New York. One of these mortgages is the one already introduced. We did not send as many bonds to Davis as the orders authorized. I sent $400,000 or $500,000. I sent the bonds by express, and received Mr. Davis' receipt."

A. B. Williams testified for the plaintiff, as follows: "I saw bonds in the possession of Davis, in New York, purporting to be issued by the Lake Erie & Louisville R. R. Co. This was in August last."

La Q. Rawson testified for the defendants, as follows: The defendants proposed to prove by said witness, that one of the bonds secured by the mortgage exhibited in the complaint is outstanding in the hands of the party to whom negotiated—a person not a party to this suit, who held the same when this suit was brought, with full notice of the facts connected with the Oswald contract and the defendants' rights under it; and that the plaintiff knew in whose hands said bond was at the time this suit was brought.

The plaintiff objected to the introduction of said evidence. The court sustained the objection, and the defendants excepted to the ruling of the court therein.

The said witness then identified the First Annual Report of the plaintiff to her stockholders, being a printed pamphlet issued to said stockholders about the 7th of March, 1866. The defendants then offered in evidence certain portions of said report. The plaintiff objected to the introduction of the same, and the court sustained the objection. To the ruling of the court therein the defendants excepted.

The evidence thus offered, and excluded, is as follows:

"*First Annual Report of the Lake Erie & Louisville R. R. Co., to the Stockholders, March 7th*, 1866.

The Lake Erie & Pacific Railroad Company, as above, was organized under the general railroad law of Indiana, and a contract was made for furnishing all the material and building complete the entire road, to be paid for, a part in cash, a part in the capital stock, and a part in first mortgage seven per cent. bonds of the company.

In accordance with this arrangement, a mortgage and 890 bonds of $1,000 each were executed and placed in the hands of trustees in the city of New York, there to remain until called for by a joint order of both parties to the contract, in accordance to the provisions thereof. Those provisions of the contract having never been fully complied with, the bonds still remain in the hands of said trustees, excepting one, which has been sold and is now outstanding.

The work under this contract was suspended in the spring of 1864.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

This line of road was, in the fall of that year, placed under contract, and the work of grading, furnishing ties, and preparing for laying the track continued to go forward until a large majority of the work in preparing the road bed for the iron had been accomplished, and until the extremely high prices of labor and materials of all kinds rendered a suspension of the work necessary, in the summer of 1864, since which time it has remained in suspense.

In furtherance of the original design of making this a great through line of road from Fremont to Louisville, Ky., *via* the Jeffersonville railroad, and thereby perfecting a communication on the shortest and best line for the interchange of the business of all that region of country at and south of Louisville and along the Ohio river, with Indiana, Ohio, and the eastern markets, the stock, franchises, etc., of the Fremont, Lima & Union Railroad Co., formerly known as the Fremont & Indiana Railroad Co., has been consolidated with that of the Lake Erie & Pacific Railroad Co.

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

This consolidation was confirmed by a vote of the stockholders of both companies, in January last, thus making it all one road from Fremont, Ohio, to Rushville, Ind., about 175 miles in length.

At Rushville, your road will connect with a branch of the Jeffersonville road *via* Shelbyville to Columbus, thence over the Jeffersonville road proper to Jeffersonville, Indiana, 112 miles, making the whole distance from Fremont to Jeffersonville 287 miles, over a road which, for beauty of alignment and easy grades, is probably not equaled by any road of similar length in the western country.

This makes a much shorter and better connection between the Falls of the Ohio, at Louisville, and the navigable waters of Lake Erie, than can be had by any other line.    *    *    *    *    *    *    *

The board of directors now propose to issue bonds which shall be secured by a first mortgage on the whole road, of an amount sufficient, in addition to the aid to be obtained along the line, to complete and equip it, and retire the present outstanding bonds, which are to be taken up and canceled, in exchange for a like number of the new issue. From the progress already made, looking to the negotiation of these bonds, it is confidently believed that we shall soon be able to dispose of a sufficient amount of them to justify the resumption of work on the line.

"L. Q. RAWSON,
"*President.*

"FREMONT, March 7th, 1866."

The defendants then proved the execution of, and offered in evidence, a contract between James Oswald and the defendants Paine, Fay, Webb, and Geo. P. Eddy. The plaintiff objected. The court sustained the objection, and the defendants excepted.

The contract thus offered in evidence, and rejected, is hereinbefore set for as "Exhibit No. 1," of the answer (*ante*, p. 299).

The defendants then identified the record of the Lake E.

& P. R. R. Co., and offered in evidence certain entries found therein. The plaintiff objected to the introduction of the same, and the court sustained the objection. The defendants excepted to the ruling.

The evidence thus excluded is, in substance, as follows: That at a meeting of the board of directors of the Lake Erie & Pacific R. R. Co., convened at Suspension Bridge, N. Y., on the 14th day of November, 1864, it was resolved to accept the proposition of James Oswald to cancel his contract with said road. Said proposition is dated November 14th, 1864, and the same has heretofore been set out.

It was also resolved to consolidate said road with the F., L. & U. R. R. Co., upon the terms of a paper made this day, subject to the ratification of the stockholders. Said contract of consolidation is then set out upon the records of said company, and is the same as the contract of consolidation heretofore set out, except that it recites, that the basis of consolidation and stock representation of each of the constituent companies shall be $470,000 to the Lake E. & P. R. R. Co., and $900,000 to the F., L. & U. R. R. Co.; and in case that the stock now issued by each of said companies is less than the amount of each as above stated, an additional amount or per cent. of stock shall be issued to the present stockholders in each of said companies, to make it equal to the amount above mentioned for each road. The present stock of said companies is to be surrendered, and consolidated stock to be given in lieu thereof, when the consolidation is perfected. Said contract is signed by

GEO. P. EDDY, D. WEBB, N. E. PAINE, JOHN D. FAY,
*Directors of the L. E. & P. R. R. Co.*
R. JENNINGS,
*Sec'y L. E. & P. R. R. Co.*
LA. Q. RAWSON, S. CARLIN, C. W. FOSTER, D. J. CORY, JAMES MOORE, R. W. B. MCLELLAN,
*Directors of the F. L. & U. R. R. Co.*
R. W. B. MCLELLAN,
*Sec'y F. L. & U. R. R. Co.*

Paine and Others *v.* The Lake Erie and Louisville R. R. Company.

It was also resolved to deliver to James Oswald an order addressed to Messrs. Davis and Robbins, trustees, etc. The same has been heretofore set out in full as Ex. No. 5. It was also resolved to convene a meeting of the stockholders of said company, to consider said contract of consolidation, at Cambridge City, Ind., on the 4th day of January, 1865; and the Secretary was directed to notify the stockholders of the same.

The defendants then offered in evidence certain other entries in the record of the Lake E. & P. R. R. Co. The plaintiff objected to the introduction of the same, the court sustained the objection, and the defendants excepted.

The evidence thus offered and excluded was, in substance, as follows:

At a meeting of the board of directors of the Lake E. & P. R. R. Co., held at Cambridge City, Ind., Dec. 6th, 1864, the proceedings of said board had at Suspension Bridge, N. Y., November 14th, 1864, as above, were approved and confirmed, and the contract of consolidation there entered into was ratified, confirmed, and adopted. It was also resolved to submit said consolidation contract to the stockholders of said company at a meeting thereof, to be called for that purpose, to be held in Cambridge City, Indiana, January 18th, 1865. It was also resolved that all proceedings had at Suspension Bridge, N. Y., on the 14th day of November, 1864, not heretofore referred to, relating to the Oswald contract, so called, or otherwise, be and are fully confirmed and adopted.

On motion of the plaintiff, various parts of the defendants' depositions were suppressed. The defendants excepted to the rulings of the court therein.

The defendants then read in evidence the unsuppressed portions of the deposition of Nicholas E. Paine, as follows:—

* * * "Soon after this, a company was organized for the construction of the same, known as the Lake Erie

& Pacific Railroad Company, with seven directors, who were, as well as I now remember, L. Q. Rawson, of Ohio; George P. Eddy, John D. Fay, and myself, of the State of New York; Alexander White, R. Rush, and Dr. Sexton, Sen., of the State of Indiana; *    *    * and said Rawson was requested to retire from the presidency and director- ship of the L. E. & P. R. R. Co., which he thereafter did, and said Eddy was chosen in his place. *    *    * This meeting at Cleveland was adjourned to the Suspen- sion Bridge, where said Oswald, Eddy, Fay, Rawson, and his engineer, S. Medberry, and myself, met for the pur- pose of considering further the question of consolidation. This was about the 14th of November, 1864. Mr. Rawson then claimed to represent the Fremont, Lima & Union road, and Medberry was present as his adviser. Mr. Rawson then distinctly and intimately knew the precise condition of the Lake Erie & Pacific road, the number of ties it owned, the extent of its grading, and the amount, as near as could be stated by Mr. Webb, of the floating debt, and also the state of its bonds and stock. He knew of the amount of local subscriptions that were unpaid, and what was conditional, and what unconditional, there being much more of these subscriptions, as well as I now remember, which were considered good, than the supposed amount of the floating debts. Said Rawson also then knew clearly, distinctly, positively, and in detail, and had done so from time to time, from the beginning, the precise relations of Eddy, Fay, Webb, Oswald, and myself, in the Oswald contract as above stated. There was no concealment from him in any respect in reference thereto, nor from any one else who made inquiry. The whole state of the case was familiar to him as to myself, or either of the directors. Under this state of facts we opened the negotiations for consolidation, and stated to said Rawson what proposition Oswald would probably make to his board of directors (which was considered a matter of mere form), as the con- tractor of record. *    *    * There is a writing to that

effect with Rawson and a Mr. Fisher, the executor of Oswald, a copy of which is annexed hereto, marked 'A;' * * * but I had no knowledge of this until after the contract was closed, nor had Fay or Webb, as I believe. Afterwards, and before the stockholders of either of the roads had voted upon the question of consolidation, thus incipiently begun at the Bridge, as aforesaid, it was adjudged necessary to legalize the proceedings as to said consolidation, thus commenced at said Bridge, in the State of Indiana; and the said Fay, Eddy, Webb, and myself, as directors, went to Cambridge City, and there met Rawson and others of the board of the Lake Erie & Pacific road, with several of its stockholders, among whom was Alfred B. Williams, and the proceedings at the Bridge were then and there confirmed by resolution of the board, and I then and there, in a statement before the board and said stockholders, and said Williams, rehearsed the transaction at the Bridge as to the $70,000 bonds, and the interest therein of Webb, Fay, Eddy, and myself, with said Oswald, and the fact that Oswald was to pay what of them might be due to Davis, Robbins, and said Wadsworth, to the end that there should be no want of knowledge in reference thereto before a final action was had upon the question of consolidation. My object in this regard was to give full notice of my interest in said bonds, and how that interest arose, so that all hearing might act accordingly. Such proceedings were thereafter had, as I am informed and believe to be true, that the said roads were consolidated, and assumed the name of the "Lake Erie & Louisville Railroad Company," since which time I have had no connection with the roads whatever. * * * I do not remember, and do not believe, that I ever exchanged even a word upon the subject of said consolidation with any party interested in the said Fremont, Lima & Union road, or with either of its directors, except as aforesaid with Rawson and Medberry. With no other party out of the officers of the road would I have entertained the subject at all."

The exhibit filed with Paine's deposition is the agree-
ment between James Oswald and La Q. Rawson, dated
Nov. 14th, 1864, and is the same as set out in Ex. No. 3.

The defendants then read in evidence the unsuppressed
portions of the deposition of John D. Fay, as follows:

"In December following, a board of seven directors were
appointed, three of whom were in Indiana, La Q. Rawson
in Ohio, and the other three, N. E. Paine, George P. Eddy,
and myself in New York.   L. Q. Rawson was made presi-
dent of the company, D. Webb superintendant, and my-
self chief engineer.   We directed the route to be surveyed
and estimated, and maps, and plans, and profiles of the line
to be made, which were done, and the line prepared for
letting the work; all which was done under my direction as
chief engineer.   I also prepared the specifications in detail
as to the manner in which the work was to be done.   *   *

*   Mr. Oswald continued the work, grading, in amount,
about fifty miles of the line, and procured a large portion
of the ties for the road, when the company ran short of
means, and the work was stopped.   In the meantime, ef-
forts were made to get the money necessary to complete
the road.   Several interviews were had in New York City
with Messrs. Bright and Ricketts, and two or three other
parties, but without any definite result.   *   *   *   Mr.
Rawson understood the relations existing between Oswald,
Eddy, Webb, Paine, and myself, before, and during the
pendency of said negotiations; and said Col. Paine, at a
meeting of the directors at Cambridge City, Ind., to confirm
the acts of the board at Suspension Bridge, stated to the
board, at which Mr. Mercer, Director Williams, and other
stockholders were present, the particulars in regard to the
70 bonds, and our relations and connections therewith."

The defendants then read in evidence the unsuppressed
portions of the deposition of George P. Eddy, as follows:
   *      *      *   "I was one of the directors of the Lake
Erie & Pacific R. R. Co., at the time of its organization, and

remained so up to the time of its consolidation with the Fremont, L. & U. R. R. Co. I was some three years president of the Lake Erie & Pacific R. R. Co. and conversant, as I believe, with all the prominent features of the letting of the road to James Oswald, and of the work done under said contract, and with the history of its consolidation. *   *   *   Mr. Oswald visited said line of road, and made a proposition to the directors at a meeting of the directors held at Cambridge City, on or about the 10th of December, 1861, at which were present, Allen Lewis, J. P. White, John D. Fay, and myself, said Lewis and White being directors of Indiana, and said Fay and myself of New York—no other directors of the board were present, or participated in said letting. The said contract was executed by L. Q. Rawson, president of the Lake E. & P., and the then said president of the Fremont & Indiana road. *  *  *

After said Rawson had remained President of said Lake E. & P. R. R. for a short time, he was induced to resign, and I was elected in his place, and remained the president of the road up to or near the time of its consolidation with the Fremont, Lima & Union R. R.   *    *    *   But said $70,000 of bonds have not been delivered, nor has said floating debt been paid, as I am informed and believe. At the time of said agreement at said Bridge, as to said consolidation as aforesaid, the said Rawson fully understood, definitely, and positively, the precise relations of Fay, Paine, Webb, and myself, with said Oswald in said contract; that we were to have, and receive, equally, the results of said 70 bonds. As to this I am positive, and that he had known such relation from the time it begun to the time of said agreement with said Oswald; *   *   *   and the said Paine (said Rawson, Williams, and others being present) stated fully the relations of said Fay, Webb, himself, and myself, in the Oswald contract, and the terms of said consolidation, so far as said 70 bonds were concerned, and the payment of said floating debt, and how our interests arose in said contract,

and that our interest in said bonds was each equal with the interest of said Oswald, and that out of them said Oswald had to quiet the legal rights of the trustees, Davis and Robbins, and said Wadsworth;　\*　\*　\*　said Williams also paid me the amount of money I had advanced in the way of expenses, while acting as director and president of said company."

The defendants then read in evidence the portions of the deposition of Dwight Webb not suppressed, as follows:

\*　\*　\*　"I should here state, by way of showing the relation of L. Q. Rawson to this line of proposed road, that he had some two years before caused to be organized a railroad company for the same object, and was for a time the president of such company.　\*　\*　\*　I was elected director of the company December 7th, 1863, or about that time, and was such at the time of the meeting at Cleveland, and all subsequent meetings, and voted on the adoption of the articles of consolidation, and on the resolutions to accept the proposition of James Oswald as before stated."

The defendants having read in evidence such portions of the depositions of Paine, Fay, Eddy, and Webb, as had not been suppressed, excepting that portion of the deposition of N. E. Paine, as follows:　"Said Oswald has deceased, and after his decease, as I am," the court directed, over the objection of the defendants, the same to be read in evidence. To this the defendants excepted. The defendants had read in evidence all of said deposition not suppressed, except the line above quoted, without condition, or exception, then, that being omitted, the court, as above, required the same to be read in evidence.

Alfred B. Williams testified for the plaintiff, as follows:

"I was not present, December 6th, 1864, at a meeting of the directors of the Lake E. & P. R. R. Co., at Cambridge City."

N. H. Johnson testified for the plaintiff, as follows:

"I was present, December 6th, 1864, at a meeting of the directors of the Lake E. & P. R. R. Co., at Cambridge City. Paine, Eddy, and Webb were present."

The court, of its own motion, charged the jury as follows:—

"GENTLEMEN OF THE JURY, In this case the Lake Erie & Louisville R. R. Co. have brought suit against Thomas Wadsworth, Nicholas E. Paine, George P. Eddy, John D. Fay, Dwight Webb, George T. M. Davis, George A. Robbins, John C. Fisher, Ex., etc., of James Oswald, deceased, Alfred B. Williams, and the Lake Erie & Pacific R. R. Co. Wadsworth, Eddy, Davis, Robbins, Fisher, Williams, and the Lake E. & P. R. R. Co., have been defaulted.

Nicholas E. Paine, John D. Fay, and Dwight Webb appear and defend, and it is the issues joined between the plaintiff and these three defendants you are to try and determine.

Those issues are, briefly, as follows: The plaintiff alleges, that the Lake Erie & Pacific R. R. Co. organized in the State of Indiana, in October, 1860; that afterwards they executed 890 bonds of $1,000 each, and at the same time executed a mortgage, or deed of trust, to said George T. M. Davis and George A. Robbins, as trustees, to secure the payment of said bonds, and that said bonds were afterwards delivered to said trustees, to be by them sold on the orders of said company. The plaintiff further alleges that the Fremont, Lima & Union R. R. Co. became organized as a corporation of the State of Ohio in January, 1862, and that afterwards said company and the Lake Erie & Pacific R. R. Co. consolidated, and became one corporation, and one railroad company, by the name of the Lake Erie & Louisville R. R. Co., the plaintiff in this suit; that afterwards said plaintiff, prior to the commencement of this suit, demanded of said trustees a delivery and cancellation of said bonds and the satisfaction of said mortgage.

The plaintiff further alleges, that said defendants, Paine,

Fay, and Webb, claimed to have an interest in said 70 of said 890 bonds, and that such claim of interest prevents the cancellation of said bonds and mortgage.

To the complaint of the plaintiff, Paine, Fay, and Webb put in a general denial, denying all the allegations of the complaint.

The instructions will be given with reference to seven interrogatories, which you are required to answer.

The first interrogatory is as follows:

1st.   Was there such an organization as the Lake Erie & Pacific R. R. Co. in the State of Indiana?

2d.   Did said railroad company execute 890 $1,000 mortgage bonds, and execute a mortgage on the line of their road to secure the payment of the same?

3d.   In whose hands were these bonds placed, and in whose hands are they now?

4th.   How many of these bonds have been negotiated and sold?

5th.   Did the defendants Nicholas E. Paine, John D. Fay, and Dwight Webb, ever, prior to the commencement of this suit, claim an interest in said bonds?

6th.   Was there such an organization in the State of Ohio as the Fremont, Lima & Union R. R. Co.?

7th.   Did the Lake Erie & Pacific R. R. Co. and the Fremont, Lima & Union R. R. Co. consolidate, and form one company, called the Lake Erie & Louisville R. R. Co., prior to the commencement of this suit?'

If a copy of the articles of association of the Lake Erie & Pacific R. R. Co. are testified to be so by the Secretary of State, this affords presumptive evidence that it is an incoporated company, and if there is no evidence showing that it was not an incorporated company, you will be warranted in answering this interrogatory in the affirmative.

If you are satisfied that Paine, Fay, and Webb were directors of said company, and acted as such, they can not now deny that it had been incorporated and organized.

As to the 2d, 3d, and 4th interrogatories, the evidence is before you, and requires no explanations or charges.

The 5th interrogatory reads as follows:

Did the defendants Nicholas E. Paine, John D. Fay, and Dwight Webb, ever, prior to the commencement of this suit, claim an interest in said bonds?

In answering this interrogatory you are not to determine whether Paine, Fay, and Webb had an interest in the 890 bonds, or any part of them, but merely whether or not they asserted that they had an interest.

The 6th interrogatory is as follows:

Was there such an organization in the State of Ohio as the Fremont, Lima & Union R. R. Co.?

The incorporation of the Fremont, Lima & Union R. R. Co. may be proved by a copy of its articles of association properly certified by the Secretary of State of the State of Ohio, and properly authenticated. I have admitted such copy in evidence. If there is no evidence contradicting such incorporation, you are warranted in answering said interrogatory it the affirmative.

The 7th interrogatory is as follows:

Did the Lake Erie & Pacific R. R. Co. and the Fremont, Lima & Union R. R. Co. consolidate, and form one company, called the Lake Erie & Louisville R. R. Co., prior to the commencement of this suit?

The consolidation of the Lake Erie & Pacific R. R. Co. and the Fremont, Lima & Union R. R. Co. must be proved to have been done according to the laws of the State of Ohio; that law and the evidence is before you."

To the giving of said instructions, and each of them, in charge to the jury, and to the propounding of said interrogatories, and each of them, to the jury, the defendants objected and excepted.

The jury, without returning a general verdict, returned the following answers to the interrogatories propounded by the court, to wit:

To the 1st interrogatory, "yes;" to the 2d interrogatory,

"yes;" to the 3d interrogatory, "in the hands of the defendants Davis and Robbins, except one bond;" to the 4th interrogatory, "one bond;" to the 5th interrogatory, "the defendants Paine and Webb did;" to the 6th interrogatory, "yes;" to the 7th interrogatory, "yes."

To the reception of the answers to said interrogatories so returned by the jury, and to the reception of each of them, the defendants excepted.

The defendants moved for a new trial, and filed written reasons therefor. The court overruled said motion, and the defendants excepted.

The court then rendered the following final judgment and decree in said cause, based upon the answers returned by the jury to the interrogatories propounded by the court, to wit:

"It is therefore ordered, adjudged, and decreed by the court, that 889 of the bonds and coupons of the Lake Erie & Pacific R. R. Co., and referred to in complaint, be delivered by the said defendants Davis and Robbins, the trustees of said mortgage given as security for the payment thereof, to the plaintiff, to be canceled, and that the same are hereby canceled, and declared null and void, and that $23,000, at the par value thereof, of the bonds of the plaintiff secured by said mortgage on the line of its road between Union and Cambridge City be delivered by the said trustee, George T. M. Davis, the grantee of said mortgage, to the defendant Williams as soon as said first original mortgage is canceled and satisfied. That the claim asserted by the defendants Paine, Eddy, Fay, and Webb, to an interest in any part of said bonds described and referred to in said complaint, is invalid and void. That the plaintiff, upon the surrender of all of said bonds by the defendants Davis and Robbins, pay to them the sum of $5,750. That the plaintiff recover of the defendants, except the defendant Fay, their costs in this suit laid out and expended, and that said defendant Fay recover of plaintiff his costs laid out and expended in this suit."

To the rendition of which said judgment and decree, the defendants then and there, both as to its substance and form, objected and excepted.

The questions presented are saved by proper bills of exceptions.

GREGORY, J.—The portions of the depositions which were suppressed only tended to prove the matters set up in the special answer and cross complaint, to which a demurrer was sustained. In our view of the case, it is not necessary to notice them more specifically.

The first question presented is, did the court below err in refusing to transfer the case to the circuit court?

The statute provides, that "when it appears upon the face of the complaint or by other legitimate pleadings verified by affidavit, that the title to real estate is in issue in the common pleas court of any county, the cause, with the papers, and a transcript of the entries of record shall be transferred to the circuit court of the same county." 2 G. & H. 22, sec. 11.

The main object of the complaint was to have satisfaction entered of a mortgage; this might or might not involve the title to real estate; it therefore did not appear on the face of the complaint that the title to real estate was in issue. There was no issue until answer, and that answer might, or might not, put in issue the title to the mortgage premises; and unless the answer was verified by affidavit, it was not the duty of the common pleas court to transfer the case to the circuit court.

The true rule on this subject is stated in *Carpenter* v. *Vanscotten*, 20 Ind. 50.

The court below committed no error in refusing to certify the case to the circuit court.

Did the court below err in overruling the demurrer to the complaint?

A very grave question is presented in the argument as to the power of two states to create one corporation. It is

claimed, that to maintain this action the consolidation must have resulted in the formation of one company, and that this is simply impossible. It is urged, that it might with as much propriety be argued that a child can have two mothers, as that two states can create one corporation. Under our view of the case, this question becomes of no importance. It is admitted by the counsel for the appellants that the effect of the consolidation might be to create two corporations, with the same name and stockholders, a unity of stock and interest. This suit, in our judgment, can well be maintained under either view. If there is but one corporation as the result of the consolidation, then the suit is undoubtedly well brought; if there are two corporations, then all the parties necessary for a complete settlement of the matter in dispute are before the court. The facts set out in the complaint show that both corporations are before the court.

It is assumed in argument by the counsel for the appellants, that the grounds of relief against the defendants are both constructive and actual fraud, and it is urged that the appellee is not in a condition to take advantage of the fraud.

The relief sought by the plaintiff is based upon a compromise and settlement between the assignee of Oswald's executor and the railroad company, for and on account of the original contract, treating the intermediate steps as offering no impediment to such a compromise and settlement. To enable Oswald's executor or his assignee to make such a settlement, there was nothing to rescind. It could hardly be contended that the appellants, under the facts averred in the complaint, could have a standing in court to entitle them to object to the consummation of such a settlement.

The complaint shows that the sub-contractors were paid out of the means of the railroad company; that the seventy bonds to which Oswald was to be entitled, by the arrangement made at the "Suspension Bridge," was profit, in which the appellants were to share. Such an arrangement made by the directors of a railroad company could only be

confirmed by the action of the stockholders, and not by the directors of whom the guilty parties formed a part.

It is clear to our minds, that the new company succeeded to the rights of the old corporations. The new was composed of the elements of the old; it was the same under a new form. It is only a play upon words to say, that phœnix-like the new arose from the ashes of the old. There was no turning to ashes necessary in the process. It only required a commingling of the elements of which the old was composed. The new assumed the liabilities and succeeded to the rights of the old.

The next inquiry is, did the court err in its rulings on the demurrers to the answers?

1. The proposed contract of Oswald with the company, dated November 14th, 1864, at Suspension Bridge, never contemplated that seventy of these bonds should be delivered to him, but only that he should receive seventy bonds of the consolidated company. This written proposition is made a part of the answer. In his proposal of the above date, Oswald says: "I will cancel and abrogate my said contract upon your giving me seventy of the first mortgage coupon bonds of your said company of $1,000 each, which bonds are to be exchanged for a like number, kind, and amount of bonds of the consolidated company, in the time and manner hereinafter specified. You to give an order upon said trustees for the balance of said bonds, 820 in number, and also for the bonds, seventy in number, which I am to have under this proposition; but all of said bonds shall be and remain in the hands of said trustees until the bonds of the consolidated company are issued and ready for delivery, as hereinafter stated; when said trustees shall cancel and exchange seventy of said bonds for a like number, kind, and amount of said consolidated bonds, which said consolidated bonds they are to hold for the benefit of, and to be delivered to, Mr. James Oswald, when called for by him. The bonds of the consolidated company to be issued

and exchanged for the present bonds within six months from the date hereof."

On the same day and at the same place of the above proposal of Oswald, an agreement was entered into between him and Rawson, in which the seventy bonds are referred to, as follows: "Second, And until seventy of the first mortgage bonds of the consolidated company of the Fremont, Lima & Union Railroad Company and the Lake Erie & Pacific Railroad Company are delivered by said Rawson, or some agent of the consolidated company, to the trustees named in the bonds of the Lake Erie & Pacific Railroad Company, subject to the order of said Oswald," &c. This agreement is also part of the answer.

The foregoing extracts show that none of these bonds, now in controversy, were ever to be delivered to Oswald, and, therefore, that these defendants could not have any interest in them.

2. The proposition of Oswald was conditional, that "I will cancel and abrogate my contract, upon," &c. The cancellation depended upon compliance with the terms of the proposition, and within six months of the time specified therein. The proposition of Oswald says:

"I beg leave to make the following proposals:

"1st. I will cancel and abrogate my said contract upon your giving me seventy of the first mortgage coupon bonds, &c.

"2d. The company to pay its floating debt—I pay all liabilities I have incurred since the 1st day of October last.

"3d. I will settle and pay the trustees of said bonds, G. S. Robbins and Geo. T. M. Davis, and will settle and pay the Hon. James Wadsworth for his services."

The fourth proposal relates to the seventy bonds.

"5th. The bonds of the consolidated company to be issued and exchanged for the present bonds within six months from the date hereof.

"6th. You to issue to me the amount of stock subscribed

by me, and now due me as a cash payment upon my said contract, for work already done."

The above proposition of Oswald only offers to cancel upon compliance with the six conditions stated in it, and not until they are complied with.

The language of the proposition is, "I will cancel and abrogate my said contract, upon" compliance with the six following stipulations. Even an unconditional acceptance of the proposition by the company would not have the effect to cancel the original contract until all the terms of the proposition had been carried out. Some of the conditions of the proposition are to be performed by Oswald, and others by the company, and not until all these conditions are complete would the original contract be affected in any way whatever.

3. The acceptance of the proposition of Oswald by the company was conditional. It is as follows:

"On motion of John D. Fay, seconded by D. Webb, the following resolution was unanimously adopted:

*Resolved,* That the proposition of James Oswald, submitted to this board, and which is hereinafter set forth, by which he rescinds and cancels his contract for the construction of the Lake Erie & Pacific Railroad, be, and the same is hereby, accepted, with all its terms and conditions; and said contract is hereby declared void and of no further effect: *provided,* the floating debt is paid off by L. Q. Rawson, of Ohio, and the bonds delivered as per agreement between said Oswald and L. Q. Rawson, on this 14th day of November, 1864."

This acceptance, being conditional, and not unqualified, amounts to nothing, unless Oswald had assented to its conditions. The proposition of Oswald, thus accepted, does not even amount to a contract to rescind the original contract, much less to a rescission of it. Even the unqualified acceptance by the company of the proposition would only create an agreement to rescind whenever the conditions of the agreement were fulfilled by both parties. But an ac-

ceptance with new conditions appended to it is, in legal effect, a rejection by the company of the proposition. The proposition of Oswald, in the second stipulation, says:

"You (the company) to pay the floating debt of said company."

The acceptance of the proposition by the company says: "*Provided*, the floating debt is paid off by L. Q. Rawson, of Ohio."

Now, the proposition of Oswald requires that the company shall not only agree to pay off its floating debt, but shall actually pay it before cancellation.

The so-called acceptance of this proposition by the company not only refuses to bind the company to pay off this floating debt, or to cancel it, but actually insists that it shall be paid by L. Q. Rawson, of Ohio.

In the pretended acceptance by the company, of the proposition of Oswald, it is also made a proviso or condition of the acceptance, that the "floating debt is paid off by L. Q. Rawson, of Ohio, and the bonds delivered, as per agreement between said Oswald and L. Q. Rawson, on this 14th day November, 1864."

The foregoing proposition and acceptance is the sole and entire contract under which Oswald could claim any interest in the bonds in controversy, and under which the defendants claim, by virtue of their agreement with Oswald. If there was no contract under which Oswald might claim an interest, of course these defendants could claim none.

The answers are also defective, in not showing a compliance with Oswald's contract to pay the trustees and Wadsworth for their services.

But independant of all this, the appellants do not show themselves entitled to any equitable relief. They do not show a compliance on their part with any of the terms of their contract with Oswald by which they were to share in the profits of the contract with the railroad company.

Under the agreement between Oswald and the appellants, the latter are only entitled to a share of the net profits.

They are not joint owners with Oswald, or interested in the specific things received by him in payment for work done under his contract. He, only, is entitled to receive the compensation, and when he has liquidated all the expenses incurred in the prosecution of the work, and thus ascertained what, if any, the net profits are, and not until then, in the absence of bad faith, can the appellants prefer any claim. See *Chase, Ad'r,* v. *Barrett,* 4 Paige Ch. 148.

It is clear to our minds, that the appellants, being directors in the railroad company, could not acquire such an interest in the profits of a contract for the construction of the road as would give them a standing in a court of equity, to interpose an objection to the consummation of a compromise between the railroad company and its contractor. Their relations to the company forbade such an agreement; at least, a court of equity would not interpose to enforce such an agreement against the interest of the company.

The court below committed no error in sustaining the demurrers to the answers.

The complaint sought no relief against the appellants. They were made parties to answer as to their pretended interest in the subject matter of the suit. In such a case, an affirmative answer is necessary if relief is sought. The general denial by such a party puts the plaintiff to such proof as would place the defendants in the wrong. They could have disclaimed any interest, and thus have saved themselves from costs. There being no answer entitling the defendants to affirmative relief, the court committed no available error in suppressing portions of the depositions of the appellants.

It is claimed, that the court below erred in admitting Swan & Critchfield's edition of the Ohio statutes in evidence.

The title page, in our judgment, shows that it was printed under the authority of the State of Ohio. It was "published for the State of Ohio, and distributed to its officers;.

under the act of the General Assembly." How could it be published under an act of the General Assembly, for the State of Ohio, unless it was published by authority? Ohio could only speak through her laws. It could not have been published for the State unless a law authorized it. An unauthorized publication could not be a publication for the State. We think the court committed no error in admitting the statute.

It is claimed, that the statute of Ohio ought to have been pleaded. This is never required where the statute constitutes a part of the organization of a corporation suing. Any other rule would tend to great prolixity in pleading.

The court committed no error in admitting in evidence the articles of association of the Fremont, Lima & Union Railroad Company. They were duly certified as required by the law under which the company was organized.

The sworn and certified copy of the articles of consolidation between the Lake Erie & Pacific Railroad Company and the Fremont, Lima & Union Railroad Company, from the office of the Secretary of State of Ohio, was properly admitted in evidence. 2 G. & H. 184, sec. 284.

The court committed no error in excluding the evidence offered by the appellants. There was no issue to which it was applicable.

The verdict embraced everything that was necessary on the issue between the plaintiff and the appellants. The equitable rights of the appellants were not before the court under the issue made.

The answers to the interrogatories could stand as a special verdict.

There is no available error in the instructions given to the jury. It was immaterial whether the consolidation resulted in one or in two corporations having the same officers and stockholders.

The decree cannot be complained of by the appellants. The default of the other defendants justified the decree as rendered.

Substantial justice was done between the appellee and the appellants; no error was committed by the court below, of which the latter have any right to complain.

Judgment affirmed, with costs.

*B. F. Claypool, T. A. Hendricks, O. B. Hord, A. W. Hendricks,* and *C. L. Holstein,* for appellants.

*Hunter & Daugherty, J. P. Siddall, N. H. Johnson,*and *W. S. Ballenger,* for appellee.